Redway v. Gray.

ALONZO REDWAY v. JOSEPH G. GRAY.

*Slander.*

Words, charging one with stealing property of a less value than seven dollars, are actionable.

It is not sufficient to render words actionable, *per se*, that they impute a crime for which the party is liable to be imprisoned; but in addition to this, the crime charged must be one which implies moral turpitude.

It is not actionable, *per se*, to charge one with burning his own buildings with the intent to defraud an insurance company which has insured it; as such words do not impute a crime, either at common law or under the statutes of this State.*

Neither is it actionable to charge one with burning the house of his wife, which was occupied by him.

An action of slander can not be maintained for imputing insolvency to the plaintiff, unless it be averred in the declaration that this imputation was made of him concerning his trade or business, and that it was untrue.

CASE for slander. The substance of the first count of the declaration was, that the defendant falsely said of the plaintiff, " Alonzo Redway will steal. He has stolen hay from Dennis Gray's barn."

---

*But see Acts of 1858, no. 22, p. 27, passed immediately after this decision, by which this offence is made a crime punishable with imprisonment in the State Prison. REPORTER.

The second count was substantially as follows:

"Also in a further plea of the case, whereupon the plaintiff declares and says, that from his childhood he has been a person of good fame and credit, and of integrity in his business, and for more than ten years last past has been an extensive dealer in produce, whereby he has made great gain and profit; that heretofore, to wit, on the 19th day of April, 1854, at Calais, he resided in a certain dwelling-house, and occupied certain outbuildings connected therewith; that said buildings, on that day, were insured to the plaintiff against loss or damage by fire, by the Vermont Mutual Fire Insurance Company for the sum of one thousand seven hundred dollars: that said buildings were on that day consumed by fire, without any agency of the plaintiff; nevertheless the defendant, not ignorant of the premises, but maliciously contriving and intending to injure the plaintiff's good name and reputation, and deprive him of his said business, and profit and gain to be made thereby, and to prevent him from recovering payment from said insurance company of the amount of his said insurance, and to induce one Ephraim Pierce, who had signed a promissory note with, and as surety for the plaintiff to the Vermont Bank, for the sum of five hundred dollars, and other creditors of the plaintiff, to cause and procure the plaintiff to be sued and his property to be attached, and thereby to subject the plaintiff to the payment of a large amount of cost, and to a great sacrifice of his property by a sale thereof at auction, did on or about the first of May, 1854, at said Calais, in the presence and hearing of the said Ephraim Pierce and divers other persons, utter and publish the following false, malicious, scandalous and defamatory words, of and concerning the plaintiff, and of and concerning the said destruction by fire of said buildings, and of and concerning said insurance aforesaid, to wit: I, (meaning the said Joseph G. Gray) believe that Alonzo Redway (meaning the plaintiff,) burnt his buildings, (meaning the said buildings consumed by fire, as aforesaid,) to make money, (meaning that the plaintiff burnt said buildings, and that he did so for the purpose of obtaining the amount of money for which said buildings were insured, as aforesaid,) and everything goes to show it, (meaning that every circumstance tended to show that the plaintiff burnt said build-

ings, and that he did so for the purpose of obtaining the amount of money for which said buildings were insured, as aforesaid.) And the defendant, continuing his malice, did then and there, in the hearing of said Ephraim Pierce and divers other persons, utter and speak the following false and scandalous words of and concerning the plaintiff, to wit: Alonzo Redway (meaning the plaintiff,) will fail. He (meaning the plaintiff,) can not pay fifty cents on a dollar, (meaning that the plaintiff was insolvent and would fail, and that he could not pay fifty cents on the dollar of the debts he was then owing). By reason of the speaking of which false and scandalous words in manner aforesaid, the plaintiff has greatly suffered in his good name and reputation, and the said Ephraim Pierce was thereby induced, and did, afterwards, to wit, on the 5th day of May, A. D. 1854, at Montpelier, in said county of Washington, cause and procure a writ to be made out on said note to the Vermont Bank, before mentioned, against the plaintiff in this suit, when otherwise the said bank would not have sued said note, and when otherwise said Pierce would not have procured said note to be sued ; and afterwards, on the same day, at said Calais, said Pierce caused said writ to be served by attaching all the plaintiff's real estate in said Calais, and the plaintiff was thereby subjected to the payment of a large amount of cost, to wit, the sum of five dollars, and is otherwise greatly injured."

The third count set forth in substance that the plaintiff had always sustained a good character among his neighbors, and had never been guilty or suspected of the crime of arson; that on the 19th day of April, 1854, he resided in and occupied a certain dwelling-house and outbuildings, the property of Rhoda Redway, wife of the plaintiff, which said dwelling-house and outbuildings were, on that day, consumed by fire, either by accident or by some evil disposed person, nor did the plaintiff in any manner cause the same; that the defendant, maliciously intending to injure the plaintiff in his good name and character, etc. etc., on the 1st of June, 1854, at Calais aforesaid, falsely, wickedly and maliciously did utter and publish in the presence and hearing of sundry persons, the following false, scandalous and defamatory words, of and concerning the plaintiff, and of

and concerning the aforesaid buildings and the burning thereof, to wit: "there is no doubt that Alonzo Redway (meaning the plaintiff) burnt his buildings (meaning the same buildings which were occupied by the plaintiff, and which were owned by the said Rhoda Redway, and which were burnt on the 19th day of April, 1854).

The fourth count was substantially the same as the first count, and the fifth count was substantially like the third, with the addition of the following words to the last innuendo: ("and that the plaintiff burnt the same buildings by design and intentionally").

To this declaration the defendant pleaded the general issue, with notice of special matter in defence, and two special pleas in bar, which, under the decision of the court, it is not material to recite, and to these pleas the plaintiff demurred.

The county court for Washington County, at the March Term, 1857,—POLAND, J., presiding,—adjudged the special pleas insufficient, to which the defendant excepted.

The case was tried by jury, at the September Term, 1857,— PECK, J., presiding.

The evidence tended to show that the property referred to by the defendant, in the words charged in the first and fourth counts to have been spoken by him of the plaintiff, was of less value than seven dollars, and that the persons, in whose presence the words were spoken, must have so understood it at the time.

The defendant insisted and requested the court to charge the jury that it was not actionable to accuse one of stealing property of less value than seven dollars. The court refused so to charge, but charged the jury to the contrary, to which the defendant excepted. The jury rendered a verdict for the plaintiff.

After verdict and before judgment, the defendant moved in arrest of judgment for the insufficiency of the declaration, but the court overruled the motion, and rendered judgment on the verdict for the plaintiff, to which the defendant excepted.

*J. A. Wing*, for the defendant.

1. The second count of the declaration is bad, and should have been so held upon the demurrer to the pleas, and for the same

Redway *v.* Gray.

reason the motion in arrest of judgment should have been allowed, as the verdict was general upon all the counts.

The words charged in this count are not actionable, *per se*, because the offence of burning one's own buildings for the purpose of defrauding an insurance company, does not, by the common law nor under the statutes of this State, subject a man to an infamous or corporal punishment. By the common law it is merely a misdemeanor; 2 Russ. on Crimes 486. By the statute of 7 & 8 Geo. IV., it was indeed made a felony, but we have no such statute.

These words therefore are not actionable, unless special damage is alleged. The only special damage pretended is that one Pierce procured the bank to sue the plaintiff, and his real estate was attached, and " he was subjected to the payment of a large bill of costs." The words "*subjected* to the payment of a large bill of costs," are not equivalent to an averment that he did pay a large bill of costs. Such payment, if made, was a material fact, and should have been set forth under a positive and direct averment, with time and place.

2. The words charged in the first and fourth counts are not actionable in themselves, because the offence of stealing less than seven dollars is not punished by an infamous punishment, nor does it involve moral turpitude; *Billings* v. *Wing*, 7 Vt. 439.

To involve moral turpitude the offence charged must be a felony; *Ogden* v. *Riley*, 2 Green. 186; *Wall* v. *Haskins*, 5 Iredell (N. C.) 177; *Haven* v. *Smith*, 4 B. Munroe 385; *Turner* v. *Ogden*, 2 Salk. 696; *Day* v. *Robinson*, 29 E. C. L. 422; *Jackson* v. *Adams*, 2 Bing. N. C. 402; *Findley* v. *Bean*, 8 Ser. & Rawle 571.

In law, infamous punishment and moral turpitude mean the same thing in relation to crimes, and the latter words do not extend the meaning of the former; *Dailey* v. *Roberts*, 3 Bing. N. C. 835; *Hall* v. *Welden*, 8 Dow. & Ry. 140; *Prindler* v. *Vaughan*, 12 Barton 212; *Boyd* v. *Brant*, 3 Brevard 241; *Dyer* v. *Morris*, 4 Miss. 214; 2 Term 473.

*O. H. Smith*, for the plaintiff.

1. We insist that the words charged in the first and fourth

counts are actionable; *Billings* v. *Wing*, 7 Vt. 439. The only difference between the imprisonment, where the property is of less value than seven dollars and where it exceeds that sum, is, that in the one case it is in the county jail not exceeding three months, and in the other it is in the state's prison not exceeding ten years. In both cases it is a punishment for the offence, and not in consequence of a default or inability to pay.

2. We insist that the words charged in the second, third and fifth counts are actionable, and that the allegations in those counts are sufficient. The second count alleges that the plaintiff sustained special damage.

Though the words alleged in the third and fifth counts may not amount to a charge of arson, technically, yet they do amount to a charge of misdemeanor of great magnitude, and punishable at common law by fine and imprisonment; 2 Russ. on Crimes, 489 ; *Holmes case*, Croke Charles, 376 ; 2 Swift's Dig. 305.

The burning of the house, though occupied by the plaintiff, was accompanied by an injury to his wife, and would therefore be criminal; *Bloss* v. *Toby*, 2 Pick. 32.

In an indictment it would not be necessary to allege an intent to injure, as it would be inferred; Archb. Cr. Pl. 300.

POLAND, J. I. As to the question raised upon the trial, whether it is actionable to charge one with stealing property of a less value than seven dollars, where the extent of the punishment provided by law, is a fine of twenty dollars or imprisonment in the county jail not more than three months, we are all agreed that such words are actionable. They impute an infamous crime, involving moral turpitude, and subject the person guilty of such an offence to corporal punishment, and it has always been held, that when all these concur, the words are actionable *per se*. In the case of *Billings* v. *Wing*, 7 Vt. 439, COLLAMER, J. quotes with approbation Mr. Starkie's definition, who says, "to impute any crime or misdemeanor for which corporal punishment may be inflicted in a temporal court, is actionable," and in that case it was held that words charging the plaintiff with an aggravated assault upon his own mother, were not actionable. The reason

given for the decision was that an assault and breach of the peace could only be punished by fine, and not by imprisonment, and though the offender might be imprisoned if he did not pay the fine, that such imprisonment was for the purpose of compelling payment of the fine, and not as punishment for the offence.

The ground of that decision would be a full authority in support of the action in this case, upon the charge in the first and fourth counts, for charging the plaintiff with stealing hay, because such offence would subject the plaintiff to corporal punishment.

But we are hardly satisfied with that criterion, for by that, it would now be actionable to charge one with having committed an assault or breach of the peace, for by our present statute those offences may be punished directly by imprisonment for a year; and yet we all apprehend that no one has ever supposed that such words were by this change of the statute made actionable. So now on a third conviction for selling ardent spirits, the party convicted is liable to imprisonment, but we do not suppose it would be actionable to say of a man, that he was guilty of even such a violation of the law restraining the sale of spirits. We think that in addition to the offence charged being punished corporeally, it must impute moral turpitude, and that the true reason why assaults, and breaches of the peace, and violations of the liquor law are not such offences as make words charging them actionable, is, because they do not necessarily and in a legal sense imply moral turpitude. The offence of larceny does necessarily imply it, and there is no distinction between grand and petty larceny in this respect. The ruling of the county court on this point was clearly right.

II. The counts charging the defendant with saying that the plaintiff burnt his own house, etc., we are satisfied can not be supported, and should have been held insufficient when that question was presented by the plaintiff's demurrer to the defendant's pleas in bar; though the pleas are conceded to be defective. The real question is, do these words impute to the plaintiff a crime? Arson at common law was the wilful and malicious burning of the house of another. The burning of a man's own house was not

arson, nor was it an offence at all, unless his house was in a town, or so near to the houses of other persons as to endanger them by the burning of his own, and even in such a case was holden not to be arson, but a misdemeanor.

By the statute of 7 & 8 GEO. IV., the setting fire to any house, etc., in the possession of the offender, or any other person, with intent to injure or defraud any person, was made a felony, and punished the same as arson.

Under this statute, the burning of one's own house, with intent to defraud an insurance company who had insured it, has been held to constitute an offence within it, but I have not been able to find any case where, prior to this statute, such an act has been held to be criminal to any extent. Similar statutes now exist in Massachusetts and many of the other States, but we have none in this State, and we therefore are forced to say that it is neither a crime at common law, nor made so by any statute in force here.

Nor is the second count made good by the addition of the words imputing insolvency to the plaintiff. The plaintiff in that count alleges that he was a dealer in produce, etc., but he does not allege that these words were spoken of him concerning this trade or business at all, nor is it alleged that these words, said of him and his pecuniary condition, were not in fact true.

The third count, which charges the defendant with saying that the plaintiff burnt the house of his wife, in which he lived, we think can not be supported, because no crime was imputed thereby.

By the common law it was not arson for a tenant for years to burn a house of which he was in the possession under a lease nor where he was in possession under an agreement for a lease, for years, for it was said that while he was so rightfully in possession it was his own house. So it was held, too, that even under the statute of 7 & 8 GEO. IV, above referred to, a wife who set fire to her husband's house was not within the statute. Much less could a husband, who was in possession of a house belonging to his wife, be guilty of arson in burning it. We are of opinion, therefore, that all the counts in the plaintiff's declaration should have been held bad (except the first and fourth) upon the demurrer, and that they are also insufficient after verdict, and as

the verdict is general, and it appears by the exceptions to have been upon the bad counts, as well as the others, we think that it can not be supported.

The judgment of the county court is therefore reversed, and a new trial granted.