**HOWES, Immigration Inspector, v. TOZER.**

(Circuit Court of Appeals, First Circuit. February 17, 1925.)

No. 1805.

**1. Aliens ⚖️54—Judgment discharging petitioner in habeas corpus proceeding held reviewable on merits.**

Where a District Court took jurisdiction in habeas corpus proceedings to review an order of deportation on the merits, its judgment discharging petitioner is appealable by respondent to the Circuit Court of Appeals, and reviewable by that court, both on the question of jurisdiction and on the merits.

**2. Aliens ⚖️54—Only unqualified admission by alien of commission of crime will warrant deportation.**

Under the provisions of Immigration Act 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), authorizing deportation of "any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude," in the absence of a conviction, the only other evidence that warrants deportation is an unqualified admission by the alien, and the immigration authorities are without jurisdiction to try the question of his guilt or innocence, or to infer his admission, against his denial, from testimony given by him in another case.

**3. Aliens ⚖️54—Where immigration authorities have exceeded jurisdiction, court may determine case on its merits.**

Where the immigration authorities, by applying an erroneous rule of law in the construction of the statute in deportation proceedings, have exceeded their jurisdiction, a District Court has jurisdiction to enter upon a judicial inquiry and determine the case on its merits.

Appeal from the District Court of the United States for the District of Maine; James M. Morton, Jr., Judge.

Petition by Frederick W. Tozer against Samuel H. Howes, Immigration Inspector in Charge, Portland, Me., for writ of habeas corpus. From a judgment granting the writ, respondent appeals. Affirmed.

For opinion below, see 2 F.(2d) 268.

John F. A. Merrill, Sp. Asst. U. S. Atty., of Portland, Me., for appellant.

Joseph E. F. Connolly, of Portland, Me. (Roger O'Donnell, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. [1] This is appeal from a decree of the federal District Court for the District of Maine, entered August 6, 1924, in a habeas corpus proceeding brought by the appellee, Tozer, against the immigration inspector in charge

at Portland, in whose custody he was held under a deportation warrant issued by the Secretary of Labor. The District Court took jurisdiction, determined the case on its merits, and ordered Tozer's discharge. The case having been heard on its merits, the respondent properly appealed the entire case to this court, where it may be reviewed on the question of jurisdiction, as well as on the merits. Tang Tun v. Edsell, 223 U. S. 673, 682, 32 S. Ct. 359, 56 L. Ed. 606.

Tozer is an alien, a native of Canada, who came to the United States in 1912, and has lived here ever since. In January, 1923, he went to Canada for a visit and at the expiration of a day or two returned to the United States. At that time, and at the time of his original entrance in 1912, he complied with all the requirements of law for admission to the country.

In July, 1923, the Secretary of Labor issued a warrant for his arrest in deportation proceedings, upon the grounds (1) that "he was a person likely to become a public charge at the time of his entry; and (2) that he has been convicted of or admits the commission of a felony or other crime or misdemeanor involving moral turpitude prior to his entry, to wit, bribery, conspiracy to defraud, or extortion."

Several hearings were held under this warrant before the inspector, at which the petitioner was represented by counsel. It appeared that in 1922 indictments were returned in the federal District Court of Maine against certain persons by the name of Ruth and Fry, who were United States narcotic inspectors, for conspiracy to defraud the government and to extort money from physicians and others, by threats of prosecution for violation of the Narcotic Drug Act (Comp. St. §§ 6287g–6287q). In one of the indictments against Ruth and Fry, the petitioner was named as one of the conspirators, but not as one of the defendants. When this indictment was tried in December, 1922, the petitioner testified as a government witness. His testimony was given on the understanding with the United States attorney that he would not be prosecuted if he so testified. The testimony given by Tozer at that time was used as evidence against him at the hearing on the warrant of arrest on the deportation proceedings. At the conclusion of the hearing in the deportation proceedings, the inspector found, while Tozer did not in so many words admit the commission of a felony or other crime or misdemeanor involving moral turpitude, "that prior to his de-

parture from the United States he admitted that he was guilty of extortion as evidenced by his testimony given as a witness" in the case against Ruth and Fry, and that as there were outstanding indictments against Tozer, on which he might be convicted, he was therefore a person likely to become a public charge.

The matter was then taken up by the Board of Review, which found that the alien was not likely to become a public charge, that there was no evidence that he had ever been convicted of any crime, and that although the record of the inspector did not disclose that the alien in so many words admitted the commission of any of the offenses charged, the transcript of Tozer's testimony in the case against Ruth and Fry, and that given before the immigration inspector, sustained the charge that he had admitted the commission of an offense involving moral turpitude as charged in the warrant of arrest, and recommended that he be deported.

On appeal to the Secretary of Labor, the finding of the Board of Review that Tozer "has been convicted of or admits the commission of a felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States, to wit, bribery, conspiracy to defraud, or extortion," was approved, and a warrant of deportation was issued on February 18, 1924.

[2] The provisions of law under which the proceeding was had and the deportation ordered are found in section 19 of the Act of February 5, 1917 (39 Stat. 889 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]), the portions of which here material read as follows:

"Sec. 19. That at any time within five years after entry, * * * except as hereinafter provided, any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry, * . * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported: * * * Provided further, that the provision of this section

respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the state, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this act. * * * In every case where any person is ordered deported from the United States under the provisions of this act, or of any law or treaty, the decision of the Secretary of Labor shall be final."

The District Judge, in construing this act, held that the word "admits" in the clause, "any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude," means "an unequivocal acknowledgment of guilt, an acknowledgment which shall leave no fair ground for doubt or debate," that it did not mean "admitting facts from which an inference of guilt may be drawn," and that "if the statement relied upon as an admission may be made outside of the deportation proceedings, a point which it is unnecessary to decide, it must in any event be acknowledged by the alien in those proceedings, and it must amount to a confession of guilt, or must state facts of such conclusive character as to be tantamount to an out and out confession"; that as the Board of Review found that Tozer did not in so many words admit the commission of any of the offenses charged in the warrant of arrest, but ruled that the admissions of fact that he did make were sufficient to establish, as a matter of fact and law, his guilt, a fundamental error of law was committed which invalidated the proceedings; that it was not the "function of the immigration tribunals under this clause of the statute to balance facts and to decide when the facts established guilt"; and that a "conclusion so reached is not an admission of guilt by the alien."

Having made this decision on the question of jurisdiction, he then reviewed the case on its merits, and found that the testimony given by Tozer in the Fry Case did warrant the finding "that he there admit the commission of a crime, as charged in deportation warrant"; that throughout testimony "the witness maintained that was the unwitting tool of Fry, and was

aware that the sums that Fry was collecting from the victims were not properly turned over to the government"; that "the Harrison Act provides that the department itself may assess penalties for certain violations without proceedings in court or any publicity—a provision easily capable of misuse in unscrupulous hands."

If the District Court had jurisdiction to consider the case on its merits, it is not denied that its finding—that Tozer never was convicted, and never admitted the commission, of the crimes of bribery, conspiracy to defraud the government, or of extortion —was warranted, and we fully agree in that conclusion. The principal contention of the appellant is that the District Court was without jurisdiction to consider the case on its merits, that the Executive Department had jurisdiction to decide all questions of fact that were involved, that its decision of them was final, and that in deciding them it did not apply an erroneous rule of law and exceed its jurisdiction. More specifically, the contention is that, as the Board of Review found that Tozer stated facts in his testimony in the Fry Case and before it sufficient to justify an inference that he was guilty of the crimes charged, and the Board had drawn the inference, that they were admissions of guilt within the meaning of section 19 of the act of 1917, and that the ruling of the District Court that they were not such admissions was erroneous.

The provision of the act of 1917 here in question was in terms taken from section 2 of the Act of February 20, 1907 (34 Stat. c. 1134).

In United States ex rel. Castro v. Williams (D. C.) 203 F. 155, Circuit Judge Ward construed and applied this provision of the act of 1907. In that case the Board of Special Inquiry and the Secretary of Labor found that the relator, Gen. Castro, admitted the commission of a crime involving moral turpitude, viz. the murder of Paredes, and therefore fell within the excluded class of "persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude." The immigration officials based their finding of his admission of guilt principally upon the ground that Gen. Castro, on being informed that he was charged with responsibility for the unlawful killing of Paredes, repeatedly refused to give any explanation, and refused to affirm or deny his guilt, although warned that unfavorable inferences would be drawn from such refusal. In considering the

meaning of the act, and whether the immigration authorities had misconstrued and applied it, the court said:

"It is to be noted that Congress has required in respect to this particular class of aliens proof of a specified kind and no other, viz. either a conviction in the country where the crime was committed or an admission by the alien. There is no pretense of any conviction, and I think ordinary proof is not sufficient. Testimony of unimpeached eye witnesses that they had seen Gen. Castro kill Gen. Paredes with his own hand in cold blood would not only be insufficient, but would be wholly incompetent. Therefore telegrams passing between the State Department and its representative at Caracas, upon which the board relied are not evidence whatever to connect Gen. Castro with the death of Gen. Paredes. When examined before the special board, he had the right to insist that the proof on this point be restricted to that required by the act, viz. his own admission. This provision must have been intended as a limitation upon the power of the immigration authorities. It deprives them of the right to try the question of guilt at all. So it is a privilege to aliens, because it insures them against any such trial. This privilege is entirely taken away, if an admission may be rested upon presumptions arising from the alien's refusing to answer questions on the subject when under examination. I think the act contemplates an explicit and voluntary admission."

And it was held: "The immigration authorities have erred as a matter of law in their construction of the statute, and so have exceeded their jurisdiction"—citing United States ex rel. Rosen v. Williams, 200 F. 538, 118 C. C. A. 632, decided by the Circuit Court of Appeals for the Second Circuit November 11, 1912.

In the latter case, the relator was held on a warrant of deportation containing a finding by the Acting Secretary of Labor that he was a member of the excluded class, in that he had admitted having committed bigamy prior to his entry into the United States. From an order dismissing his petition for habeas corpus, he appealed. The alien appears to have admitted his guilt at the hearing before the immigration officer, and his contention was that the fact that he had admitted guilt after his entry into the country or after the issuance of the order of arrest was no proof whatever; that the statute speaks of an admission as of the time of the entry of the person into the

country, and not as of the time of the hearing. The court, however, held to the contrary, saying: There is "no reason why such evidence should be furnished by admissions made prior to rather than after the entry of the alien into this country, and [we] are not convinced that the language of the act requires us to so limit it." The court further said: "The purpose of the act is to exclude aliens who have committed serious crimes in their own countries. Congress has not deemed it expedient to give immigration officers general power to determine questions of guilt or innocence, and has limited them to excluding such criminals as have been convicted or admit their guilt. The admission is treated as evidence of guilt tantamount to conviction."

The order of the District Court, dismissing the petition, was affirmed, as the alien's admission of guilt was competent and sufficient to warrant the finding of the immigration officers, which was final.

Other cases have arisen in which this provision of the Acts of 1907 and 1917 has been applied, but they lend little aid to its construction. See United States v. Uhl, 210 F. 860, 127 C. C. A. 119; Sibray v. United States, 185 F. 401, 107 C. C. A. 483; Prentis v. Cosmas, 196 F. 372, 116 C. C. A. 419; Rousseau v. Weedin (C. C. A.) 284 F. 565; United States v. Brooks (D. C.) 284 F. 908.

We are of the opinion that Congress, by the enactment of this provision, has required the alien's own admission of guilt as proof of the commission of this class of crimes, and has deprived the immigration authorities of the right to try the question of guilt; that the statute contemplates a voluntary admission; and that evidence of facts stated by the alien from which an inference of his guilt might be inferred is not competent. We do not, however, think that evidence showing an admission of guilt is confined to an admission made by the alien at the hearing on the deportation warrant, but that an admission made by him at a prior time would be competent.

[3] In this case, Tozer, at the hearing before the inspector, repeatedly denied that he had admitted the commission of the crimes charged in the warrant; his testimony in the Fry Case was not an out and out admission of guilt; it was merely a statement of facts from which guilt might or might not be inferred; and the Department of Labor, by taking it into consideration, and basing its order of deportation thereon, applied an erroneous rule of law and exceeded its jurisdiction, and because

of this the District Court had jurisdiction to enter upon a judicial inquiry and determine the case on its merits.

The decree of the District Court is affirmed.