## CITY OF PHILADELPHIA ex rel. FUREY v. PHILADELPHIA RAPID TRANSIT CO. et al.

District Court, E. D. Pennsylvania. June 7, 1926.

No. 3597.

1. **Courts** ☞366(1)—Federal courts accept meaning of state statute as declared by state courts, in determining whether it violates federal Constitution.

Courts of the United States will accept meaning of state statute, as declared by state courts, and if, when given that construction, the act is not in violation of Constitution of United States, will so declare, even though they might differ from state court's construction of the statute.

2. **Courts** ☞366(26)—Federal court will follow state court's construction of state statute authorizing Public Service Commission to prescribe street car fares in manner not impairing obligation of contract (Public Service Law Pa. art. 5 [Pa. St. 1920, §§ 18125–18161]; Const. U. S. art. 1, § 10, and Const. U. S. Amend. 14).

Highest state courts having construed Public Service Law Pa. art. 5 (Pa. St. 1920, §§ 18125–18161), empowering Public Service Commission created thereby to prescribe fares to be charged by transit companies, under which commission ordered transit company to raise its basic fare from 5 to 8 cents, notwithstanding franchise limited fare to 5 cents, in such a manner as not to impair the obligation of any contract, under Const. U. S. art. 1, § 10, and Const. U. S. Amend. 14, such construction will be followed by federal court.

**3. Courts ⊙⟶365(3)—Federal court must form its own judgment respecting meaning of federal Constitution.**

A court of the United States is bound to form its own judgment of the meaning of the Constitution of the United States, and to apply the meaning so found, whatever meaning may be found elsewhere.

In Equity. Suit by the City of Philadelphia, on the relation of Daniel J. Furey, against the Philadelphia Rapid Transit Company and others. On defendants' motion to dismiss bill. Bill dismissed.

James J. Regan, Jr., of Philadelphia Pa., for complainant.

C. J. Joyce and Frederic L. Ballard (of Ballard, Spahr, Andrews & Madeira), both of Philadelphia, Pa., for Philadelphia Rapid Transit Co.

Frank M. Hunter (of Hannum, Hunter & Hannum), of Chester, Pa., for Public Service Commission of Pennsylvania.

DICKINSON, District Judge. Counsel supporting the cause of action sought to be presented has given an exhaustive and intensive study to all features of the case. He has brought it in the form presented and has made parties to it all those named. No criticism is directed to these formal features, and we pass them without comment, to go directly to the questions raised.

A very general and inadequate outline of the cause of action set forth in this bill is thus presented:

(1) The Philadelphia Rapid Transit Company is a street railway corporation operating in the city of Philadelphia.

(2) Its right or franchise to use the streets which it occupies rests wholly upon the consent of the municipality, evidenced by an ordinance of the city.

(3) This consent was conditioned or granted upon the terms (inter alia) that its basic rate of charge for transportation service should not exceed 5 cents per passenger.

(4) This condition was confirmed and the obligation to conform to it assumed by the company through its solemn contract with the city so to do.

(5) The corporation was avoiding this condition of its franchise and evading the obligations of its contract by exacting the payment of a basic fare of 8 cents.

(6) The color of legal sanction was given to this violation of the terms upon which the corporation held its franchise and the obligations of its solemn contract by the passage of an act of assembly known as the Public Service Company Law, article 5 of which (Pa. St. 1920, §§ 18125–18161) empowered the Public Service Commission (created by the act) to prescribe the fares to be charged by such companies as the above-named defendant, and by the entry of an order by the commission requiring the transit company to raise its basic rate of charge from 5 cents to 8.

(7) The power to thus sanction the violation of a contract and to deprive the parties to it of their rights thereunder is denied to the state of Pennsylvania by the phrase in clause 1 of section 10 of article 1 of the Constitution of the United States, that "no state shall * * * pass any * * * law impairing the obligation of contracts," and by the "due process" and "equal protection" provisions of the Fourteenth Amendment, both of which are invoked by the plaintiffs, and the appeal is made to a court of the United States to make these provisions of the Constitution effective.

The prayers of the bill accordingly are (inter alia) as follows: To enjoin the transit company from collecting fares in excess of its contract rates without the consent of the other contracting party, the members of the Public Service Commission from making any orders in conflict with the provisions of such contract, to require the revocation of the order already made, and for an accounting by the transit company of the excessive fares received, etc.

No answers have as yet been filed, the bill being challenged by motions to dismiss. We may, however, anticipate the defense disclosed in the argument on this motion. The defense is twofold. That of the commission evidently is that there has been no violation of either the conditions of the franchise or the terms of the contract of the rapid transit company, but that the company has been compelled by the peremptory orders of the commission to forego its right and esteemed privilege to serve the public for a 5-cent fare, and notwithstanding its great reluctance to exact 8 cents for the same service, and that the order has been made by the commission wholly for the benefit of the traveling public.

The defense of the transit company is that its franchise was granted by and its contract made with the commonwealth of Pennsylvania, and that the latter, as the other party to the contract, had, through the commission, insisted upon a change in the conditions of the franchise and the terms of the contract, in which change the company had again, with extreme reluctance, acquiesced.

The defendants have accordingly filed

separate motions to dismiss. The motions are alike, but the grounds differ. These several grounds may be reduced to two. One is a lack of jurisdiction in a court of the United States to entertain the cause. The other is in effect a demurrer, based upon the averred failure of the bill to disclose a cause of action. When the argument at bar opened, we had not seen the bill, and understood it to be such as might have been filed in a state court, which could have been brought here only because of diversity of citizenship. The very resourceful counsel who drew the bill evidently foresaw this objection, and prevented it by express averments that the Constitution of the United States enters into the consideration of the questions raised. The fact averment, appearing as it does on the face of the bill, with the protection of the provisions of the Constitution of the United States invoked by the plaintiffs, the elaborate supplemental brief vindicating the jurisdiction of this court and making clear our duty to take jurisdiction was not needed. The question of a cause of action may, however, be raised upon the fact averments as they appear in the bill. The cause is none the less a state case, however, because it is cognizable in a court of the United States. [1, 2] The distinction is a sound one between the construction of a contract and of an act of assembly, and the constitutionality of the latter. It is the province of the state courts to declare the meaning of an act of the state assembly and of the Constitution of the state, and, if the meaning of the act be found to be such as that all conflict between it and the Constitution of the United States is avoided, the established doctrine is that the courts of the United States will accept the meaning of a state statute as found by the state courts to be, and if, when given that construction, the act is not in violation of the Constitution of the United States, will so declare, even although they might differ with the state courts in the construction given by the latter to the statute. It is in effect, and indeed almost in terms, admitted that the highest courts in Pennsylvania have so construed the act of assembly in question and the Constitution of the state as that the statute does not "impair the obligation of" any contract. If such be the case, the act of assembly does no violation to the provisions of article 1 of the Constitution of the United States, and, if it does not, the Fourteenth Amendment has no application. We leave to the opinions cited the vindication of the soundness of this view. Whether the law of Pennsylvania should have been declared to be otherwise, as is the opinion of counsel for plaintiffs, is beside the mark. It has been authoritatively so declared to be, and we deem ourselves to be bound to follow the rulings made.

[3] A court of the United States is, of course, bound to form its own judgment of the meaning of the Constitution of the United States, and to apply the meaning so found, whatever meaning may be found elsewhere. The thought, however, is that when, for illustration, one or the other of two meanings may be given to an act of assembly of a state, one of which conflicts with the Constitution of the United States and the other of which does not, the act means what the courts of the state have declared it to mean, and the conflict is accordingly declared or denied. If, for further illustration, the courts of Pennsylvania have found that the power granted by the Constitution of the state to its municipalities to decide for themselves what and on what terms and conditions street railway franchises shall be exercised within the municipal limits is a power which is itself subject to the exercise of the police power, which by another provision of the state Constitution is reserved to the state, then it follows that the franchise granted by the city of Philadelphia to this transit company was granted subject to the exercise by the state of its reserved police power, and the right of the company, so far as granted by contract, was likewise so subject.

This is the very point which we understand it to be admitted the courts of the state have ruled. The real position of the plaintiff is that they erred in so ruling. The correctness of this ruling is attacked and vindicated by arguments which have taken a wide range and have been presented and urged pro and con and enlarged upon with marked ability. We see no need to pursue these very interesting arguments. The conclusion we have reached is that it is not our province to make any pronouncement thereon.

In the view taken, the bill discloses no cause of action, and the bill should in consequence be dismissed, with costs. A formal decree to this effect may be submitted, none being now made.