**COYKENDALL, District Director of Immigration, v. SKRMETTA.**

Circuit Court of Appeals, Fifth Circuit.
October 22, 1927.

No. 5018.

1. **Words and phrases—"Involving moral turpitude" means inherently base, vile, or depraved; against accepted rules of morality.**

The words "involving moral turpitude," as used in the law with reference to crimes, refer to conduct which is inherently base, vile, or depraved, contrary to accepted rules of morality, whether it is, or is not, punishable as a crime, they do not refer to conduct which, before it was made punishable as a crime, was not generally regarded as wrong or corrupt.

2. **Aliens ⊂⊃47—Conviction for making and having wine for his own use held not for crime "involving moral turpitude" (Immigration Act 1917, § 3 [8 USCA § 136]).**

Conviction of alien for manufacturing and having in his possession wine for his own use *held* not for a crime "involving moral turpitude," which authorizes his exclusion, under Immigration Act 1917, § 3 (8 USCA § 136).

3. **Aliens ⊂⊃49—Provision for exclusion as likely to become public charge does not deal with criminal misconduct or imprisonment therefor (Immigration Act 1917, § 3 [8 USCA § 136]).**

The provision of Immigration Act 1917, § 3 (8 USCA § 136), excluding aliens likely to become a public charge, is not intended to deal with the subject of criminal misconduct or imprisonment therefor which is elsewhere specifically provided for as ground of exclusion or deportation.

4. **Aliens ⊂⊃49—Pendency of indictment against alien at time of entry not ground for his exclusion as likely to become public charge.**

Pendency, at time of alien's entry, of indictment charging him with an offense punishable by fine or imprisonment, or both, furnishes no substantial support for a finding that it was then likely that he would be convicted and imprisoned, and thus become a public charge.

Appeal from the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Proceeding by Nicholas Skrmetta against M. A. Coykendall, District Director of Immigration, for writ of habeas corpus. From an order granting the writ, respondent appeals. Affirmed.

For opinion below, see 16 F.(2d) 783.

J. W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for appellant.

Edgar A. Neely, of Atlanta, Ga., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from an order made in a habeas corpus proceeding, discharging the appellee, Nicholas Skrmetta, an alien, who complained of his detention under an order of deportation. It was disclosed that the grounds on which the deportation order was made were: (1) That prior to appellee's entry into the United States, at Brownsville, Tex., on September 5, 1924, he had been convicted of a crime involving moral turpitude, the only support for that conclusion being evidence of his conviction in California of violations of the National Prohibition Act (27 USCA), by manufacturing intoxicating liquor and having it in his possession, that conviction being based on the appellee making from grapes and having in possession for his own use 150 gallons of wine; and (2) that at the time of such entry appellee was a person likely to become a public charge, the only support for that conclusion being evidence of the facts that at the time of such entry there was pending in the United States District Court at Biloxi, Miss., where appellee had resided for several years, an indictment against him for a violation of the Harrison Anti-Narcotic Act (26 USCA §§ 211, 691 et seq. [Comp. St. § 6287g et seq.]), and that under that indictment he was convicted, on his plea of guilty, on June 8, 1926, and was sentenced to and served a term of six months' imprisonment in the United States Penitentiary at Atlanta.

[1] Under the Immigration Act of 1917, at any time within five years after entry, an alien is subject to be deported if, at the time of his entry, he was a member of the class described by the words, "persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude." Sections 3, 19, 39 Stat. 875, 889 (Comp. Stat. §§ 4289¼b, 4289¼jj [8 USCA §§ 136, 155]). The above-mentioned violations of the National Prohibition Act were not felonies. The words "involving moral turpitude," as long used in the law with reference to crimes, refer to conduct which is inherently base, vile, or depraved, contrary to accepted rules of morality, whether it is

or is not punishable as a crime. They do not refer to conduct which, before it was made punishable as a crime, was not generally regarded as morally wrong or corrupt, as offensive to the moral sense as ordinarily developed.

[2] Before the enactment of statutes on the subject, the making or possession of wine for the use of the maker as a beverage was not generally regarded as morally wrong. From the fact that those acts have by statute been made punishable as crimes it does not follow that they are inherently immoral, or involve moral turpitude, within the meaning of the provision in question. Bartos v. United States (C. C. A.) 19 F.(2d) 722; Ex parte Marshall, 207 Ala. 566, 93 So. 471, 25 A. L. R. 338. We conclude that the deportation order was not sustainable on the first mentioned ground.

[3] In the Immigration Act of 1917 (39 Stat. 875, § 3) the words "persons likely to become a public charge" are not, as they were in the Immigration Act of 1907 (34 Stat. 898), as amended, mentioned between paupers and professional beggars, and along with idiots, persons dangerously diseased, persons certified by the examining surgeon to have a mental or physical defect of a nature to affect their ability to earn a living, convicted felons, etc. The location in the earlier act of the words in question was given the effect of throwing light on the meaning to be given to them. Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114. It may be inferred that the change made in the location of the words in question indicated a legislative intention that the determination of the meaning to be given to them should not be influenced by the words or provisions with which, in the earlier act, they were immediately associated. But it well may be inferred that the words "likely to become a public charge" were intended to have the same meaning, when used more than once in the section of the act (section 3) which defines the different classes of aliens which are excluded from admission. Two of those classes are "persons likely to become a public charge" and "all children under sixteen years of age, unaccompanied by or not coming to one or both of their parents, except that any such children may, in the discretion of the Secretary of Labor, be admitted if in his opinion they are not likely to become a public charge and are otherwise eligible."

As used in the last set out provision, it cannot well be supposed that the words in question were intended to refer to anything other than a condition of dependence on the public for support. Nothing in the act indicates that in using the words in question the lawmakers had in mind the subject of criminal misconduct or the consequences thereof. That the provision in question was not intended to deal with the subject of criminal misconduct or imprisonment therefor as a ground of exclusion or deportation is indicated by the fact that the act specifically prescribes the grounds for excluding or deporting aliens because of crimes. An alien is made subject to be deported, if at the time of his entry he had been convicted of, or admitted having committed, a felony or other crime or misdemeanor involving moral turpitude, or, subject to a stated exception, if he is sentenced to imprisonment for a term of one year or more because of conviction in this country of any crime involving moral turpitude committed at any time after his entry, or if he has been sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude committed at any time after entry. Sections 3, 19.

[4] The just referred to provisions indicate the absence of a legislative intention to authorize the deportation of an alien because of crime or punishment therefor other than that specifically mentioned. The pendency at the time of an alien's entry of an indictment charging him with an offense punishable by fine or imprisonment, or both (Comp. Stat. § 6287o [26 USCA § 705]), furnishes no substantial support for a finding that it was then likely that he would be convicted of the offense charged and imprisoned therefor. The fact that an unproved charge of crime has been made against one has no logical tendency to prove that he has been guilty of any offense. Coyne v. United States (C. C. A.) 246 F. 120.

We think that above referred to provisions of the act are inconsistent with the existence of an intention to authorize a finding that at the time of an alien's entry into the United States he was a member of the class defined by the words "persons likely to become a public charge" to be based on evidence that at the time of such entry there was pending an indictment charging the alien with an offense punishable by fine or imprisonment or both, and that after his entry he was convicted of that offense and imprisoned therefor. It follows that the order of deportation was not sustainable on the second above mentioned ground.

The order under review is affirmed.