## TILLINGHAST, Immigration Com'r, v. ED-MEAD.

Circuit Court of Appeals, First Circuit.
February 18, 1929.

No. 2307.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for appellant.

John T. Lane, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for Massachusetts granting the petition of the appellee for a writ of habeas corpus and ordering her discharged from the custody of the Commissioner of Immigration at Boston, by whom she was held for deportation.

The appellee, Phyllis Edmead, is a woman 23 years of age, born in the British West Indies. She arrived in this country on or about the 22d of April, 1924, and was lawfully admitted. She engaged in domestic service, and, while so employed by one Annie I. Dale, was, on the fifth day of March, 1927, arrested on a warrant, issuing out of the municipal court of the Roxbury district, charged with the larceny of "certain moneys of the amount and of the value of fifteen (15) dollars." Thereafter, on the 7th day of March, 1927, she pleaded guilty to the charge and was sentenced to be committed to the Reformatory for Women at Framingham. From this sentence she appealed to the superior court for the county of Suffolk. On April 11, 1927, she was sentenced in that court for the above-named offense to confinement in the county jail for the term of one year. September 18, 1927, an application for a warrant of arrest under section 19 of the Act of February 5, 1917; 8 USCA § 155, was made to the Department of Labor, and, on September 27, 1927, a warrant of arrest was issued wherein it was charged that the appellee had been found in the United States in violation of the Immigration Act of February 5, 1917 (39 Stat. 874), for the following reason:

"That she had been sentenced, subsequent to May 1, 1917, to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, to wit, larceny, committed within 5 years after her entry into the United States at Boston, Massachusetts, about April 23, 1924."

November 9, 1927, she was taken into custody under the warrant and accorded a hearing before an immigration inspector at Boston. A report of the hearing was made to the Department of Labor sustaining the allegations of the warrant; and the Assistant Secretary of Labor, after inspection of the report, being satisfied that the appellee had been found in the United States in violation of the Immigration Act of February 5, 1917, on November 22, 1927, issued a warrant of deportation ordering the appellee to be returned to the country from whence she came. Thereafter the appellee filed this petition for a writ of habeas corpus and, the case having been heard, the court on June 11, 1928, ordered the writ to issue and that the petitioner be discharged. This appeal was taken therefrom.

The District Court took jurisdiction on the ground that the immigration tribunals proceeded upon a fundamental error of law in that they ruled that one convicted of the crime of larceny was as a matter of law convicted of a crime involving moral turpitude. It held that while some crimes are of such character as necessarily to involve moral turpitude, others might or might not; that as to the latter class it was a question of fact to be determined by the circumstances; that, while there was authority that all larceny involved moral turpitude it was of the opinion that petit larceny did not necessarily, and that the circumstances must be inquired into to determine whether moral turpitude was shown.

The provisions of law under which the proceeding was had and the deportation ordered are found in section 19 of the Act of February 5, 1917 (39 Stat. 889 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ jj]), the portions of which here material read as follows:

"Sec. 19. That at any time within five years after entry, * * * except as hereinafter provided, any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the

entry of the alien to the United States, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry, * * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported: * * * Provided further, that the provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the state, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this act. * * * In every case where any person is ordered deported from the United States under the provisions of this act, or of any law or treaty, the decision of the Secretary of Labor shall be final."

There is no evidence or finding in the case that the alien, Edmead, has been pardoned for the crime in question, or that the court or judge sentencing her for such crime, at the time of imposing judgment or passing sentence or within 30 days thereafter, made recommendation to the Secretary of Labor that the alien should not be deported in pursuance of the act.

Gen. Laws Mass. c. 266, § 30, provides: "Whoever steals, * * * the money or personal chattel of another, * * * shall be guilty of larceny, and shall, if the value of the property stolen exceeds one hundred dollars, be punished by imprisonment in the state prison for not more than five years or by a fine of not more than six hundred dollars and imprisonment in jail for not more than two years, or if the value of the property stolen does not exceed one hundred dollars, shall be punished by imprisonment in jail for not more than one year or by a fine of not more than three hundred dollars."

Stealing is defined as "the criminal taking, obtaining or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it. * * *" Gen. Laws Mass. c. 277, § 39.

"A crime punishable by death or imprisonment in the State prison is a felony. All other crimes are misdemeanors." Gen. Laws Mass. c. 274, § 1.

As the crime of which the alien was convicted in the state court was the larceny of money of a value less than $100, the crime of which she was convicted was petit larceny and a misdemeanor within the meaning of the above provisions of law; and the jurisdiction of the District Court depends upon whether a conviction of petit larceny, a misdemeanor, is in law the conviction of a crime involving moral turpitude. If it is, the District Court was without jurisdiction.

Blackstone in his Commentaries, book 1, pp. 54–58, says:

"Neither do divine or natural duties receive any stronger sanction from being also declared to be duties by the law of the land. The case is the same as to crimes and misdemeanors, that are forbidden by the superior laws, and therefore styled mala in se, such as murder, theft, and perjury; which contract no additional turpitude from being declared unlawful by the inferior Legislature. For that Legislature in all these cases acts only * * * in subordination to the Great Lawgiver, transcribing and publishing His precepts. So that, upon the whole, the declaratory part of the municipal law has no force or operation at all, with regard to actions that are naturally and intrinsically right or wrong." That with "regard to natural duties, and such offenses as are mala in se; here we are bound in conscience; because we are bound by superior laws, before those human laws were in being, to perform the one and abstain from the other."

From this it appears that theft or larceny was a crime at common law involving an act intrinsically and morally wrong and malum in se, and does not acquire additional turpitude from being declared unlawful by the municipal law. In other words, that an act that was at common law intrinsically and morally wrong, malum in se, does not become any more or any less so by reason of the fact that the Legislature may see fit to call it a felony, if the thing stolen is of a value exceeding a given amount, or to call it a misdemeanor, if the thing stolen is of less value. In either case the offense is one involving moral turpitude.

In Bartos v. United States, 19 F.(2d) 722, 724, the Circuit Court of Appeals for the Eighth Circuit, in discussing this matter, said: "A thief is a debased man; he has no moral character. The fact that a statute may classify his acts as grand and petit larceny, and not punish the latter with imprisonment and declare it to be only a misde-

meanor, does not destroy the fact that theft, whether it be grand or petit larceny, involves moral turpitude. It is malum in se, and so the consensus of opinion—statute or no statute—deduces from the commission of crimes mala in se the conclusion that the perpetrator is depraved in mind and is without moral character, because, forsooth, his very act involves moral turpitude."

In Redway v. Gray, 31 Vt. 292, 298, the court said:

"The true reason why assaults, and breaches of the peace, and violations of the liquor law are not such offenses as make words charging them actionable, is, because they do not necessarily and in a legal sense imply moral turpitude. The offense of larceny does necessarily imply it, and there is no distinction between grand and petty larceny in this respect." See, also, In re A. M. Henry, 15 Idaho, 755, 99 P. 1054, 21 L. R. A. (N. S.) 207; Coykendall v. Skrmetta (C. C. A.) 22 F.(2d) 120; Matter of Gannett, 11 Utah, 283, 39 P. 496, 497; 16 Corpus Juris, § 8; 12 Cyc. 131, 132.

■ The record of conviction in the state court was, in this proceeding under section 19, conclusive evidence of a conviction of the crime therein charged; the other evidence relating to the crime committed was improperly received and considered. United States v. Williams (D. C.) 203 F. 155, 156; Howes v. Tozer (C. C. A.) 3 F.(2d) 849.

The decree of the District Court is vacated, and the case is remanded to that court, with directions to dismiss the petition and discharge the writ.

ANDERSON, Circuit Judge (dissenting). In Judge Morton's opinion in this case (Ex parte Edmead (D. C.) 27 F.(2d) 439) he says:

"The only ground of deportation now relied on is that Edmead has been convicted of a 'crime involving moral turpitude.' That the expression connotes something more than 'illegal' or 'criminal' is clear—law and morality are by no means identical. The best definition which I have found is Judge Walker's in Coykendall v. Skrmetta [C. C. A.] 22 F.(2d) 120. 'The words "involving moral turpitude," as long used in the law with reference to crimes, refer to conduct which is inherently base, vile, or depraved, contrary to accepted rules of morality, whether it is or is not punishable as a crime. They do not refer to conduct which, before it was made punishable as a crime, was not generally regarded as morally wrong or corrupt, as offensive to the moral sense as ordinarily developed.' 22 F.(2d) 120–121.

"Whether any particular conviction involves moral turpitude under this test may be a question of fact. Some crimes are of such character as necessarily to involve this element; others of which the punishment is quite as severe do not (see Ex Parte Saraceno [C. C.] 182 F. 955); and still others might involve it or might not. As to this last class, the circumstances must be regarded to determine whether moral turpitude was shown. While there is authority that all larceny involves [moral] turpitude (see Re A. M. Henry, 15 Idaho, 755, 99 P. 1054, 21 L. R. A. [N. S.] 207), I am not prepared to agree that a boy who steals an apple from an orchard is guilty of 'inherently base, vile, or depraved conduct.' Where the larceny is petty, I think the circumstances must be inquired into.

"The evidence as it stands about the crimes for which Edmead was convicted does not seem to me to prove moral turpitude. While she does not appear to be a very desirable citizen, she is not on that account to be denied her legal rights."

I agree with those views. It seems to me monstrous to hold that a mother stealing a bottle of milk for her hungry child, or a foolish college student stealing a sign or a turkey, should be tainted as guilty of a crime of moral turpitude. But such is the logical result of the majority opinion.

When Blackstone wrote his treatise lauding the justice and reason of the English law, there were, as I recall it, something like 120 capital offenses in England, including larceny of property worth 5 shillings. It was one of the most brutal systems of law ever in force in any land at any time. Blackstone's assumption of personal knowledge from "the Great Lawgiver" as to what offenses are mala in se and can "contract no additional turpitude from being declared unlawful by the inferior Legislature," I think absurd. Nothing could be more chaotic, illogical and unethical than our prevailing views and practices as to property rights. Essentially, our legal and economic structure is predatory. We do not attempt to co-ordinate acquisition with useful productivity. Our common methods of "big money making" always involve getting the results of other people's productive labor. On any sound and ethical theory of property rights, winnings at gambling—even stock-gambling—are as unjustifiable as many kinds of takings condemned by statute as larcenies.

Until our code of property rights and wrongs bears more relation to anti-social methods of acquisition, I think the moral turpitude taboo should not be extended to

cover such trifling offenses as this ·ignorant colored girl testifies (there is no other evidence) she committed.

This case is of little importance, probably not even to the appellee; but the doctrine now enunciated may do much harm.