### UNITED STATES v. CARROLLO.
#### Nos. 14639, 14581, 14578.

District Court, W. D. Missouri, W. D.
Nov. 18, 1939.

4.

Maurice M. Milligan, U. S. Atty., and Thomas A. Costolow, Asst. U. S. Atty., both of Kansas City, Mo., for plaintiff.

William L. Vandeventer, of Springfield, Mo., and Jerome S. Koehler, of Kansas City, Kan., for defendant.

OTIS, District Judge.

Charles V. Carrollo was sentenced on October 20, 1939, to undergo imprisonment in the penitentiary on account of three separate felonies, as to one of which he was found guilty by a jury and as to two of which he entered pleas of guilty. On November 11, 1939, he applied to the judge who sentenced him for a recommendation to the Secretary of Labor that he be not,

deported to Italy. The application was made pursuant to Section 155, Title 8, U.S. C., Sec. 155, Title 8, U.S.C.A. The question presented is whether any recommendation shall be made and, if so, what recommendation.

Section 155 of Title 8, U.S.C.A. provides as follows: "§ 155. Deportation within certain time of aliens entering or found in United States in violation of law. * * * except as hereinafter provided, any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported. * * * The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this subchapter; * * *."

## The Judicial Power

█ 1. At the very threshhold the challenge of the statute by learned counsel for the United States must be considered. In so far as the statute authorizes the judge to make a recommendation to the Secretary of Labor against deportation, if the statute is construed as imposing a duty on the judge, is it valid? Is the authority so attempted to be given any part of *the judicial power* which alone is vested by the Constitution in the courts (U.S.C.A. Constitution, Article III, Section 1)? It has long been settled that Congress can require of the constitutional courts only such duties as are within *the judicial power*. Den ex dem. Murray v. Improvement Co., 18 How. 272, 274, 15 L.Ed. 372; Ex parte Siebold, 100 U.S. 371, 397, 25 L.Ed. 717; Federal Radio Comm. v. General Elec. Co., 281 U. S. 464, 469, 50 S.Ct. 389, 74 L.Ed. 969.

█ The question then is, is such a "recommendation" as that authorized by the statute an exercise of judicial power? What is the judicial power? "Judicial power," said Mr. Justice Miller in his work on the Constitution, p. 314 (quoted with approval in Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246) "is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision."

█ Considered in the light of that definition (or of any other definition which may be found in the books) is such a recommendation as that authorized by this statute an exercise of judicial power? It is not. The very nomenclature used supports the conclusion. A "judgment" is not a "recommendation." Surely a "judgment" of a constitutional court could not be a mere "recommendation to the Secretary of Labor." A judgment of a court in a case presented to it—the true exercise of judicial power—is final (save as it may be reviewed and set aside by some higher judicial tribunal). No power—not judicial—can set it aside. The very language of this statute indicates that the "recommendation" is something other than a "judgment". It is to be made *at the time of imposing judgment * * * or within thirty days thereafter.*"

The statute does not contemplate that the "recommendation to the Secretary of Labor" shall be made in any "case" before the court. But judicial power may be exercised only in connection with a case or controversy. What *case* involves the matter of Carrollo's deportation? Certainly not the criminal cases in which he was convicted. The statutes under which he was indicted make no distinction between citizen and alien. They impose no greater punishment on the alien than the citizen. The indictments do not charge that the crimes were committed by an alien. Yet no other case concerning Carrollo, except the criminal cases, is or has been before the court.

The government has not come into court asking for a judgment of deportation. No statute would justify it. Carrollo is not here resisting such a proceeding. So there is no case, no controversy, the sine qua non of the exercise of judicial power. For it will hardly be said that a mere application for a "recommendation" makes a case or controversy in the constitutional sense.

And suppose the "recommendation" applied for is refused, will that be a judgment *against* the alien that the court has power to "carry" "into effect," to quote again from Mr. Justice Miller's definition? Certainly not. The Secretary of Labor must issue a warrant of deportation and the Secretary may or may not issue it. What kind of a *judgment* is it that the Secretary of Labor may nullify? What kind of a *case* is it that, in a sense, can be decided only one way?

Perhaps the judge should discharge even extrajudicial duties when called on by a co-ordinate branch of government or by a representative of a co-ordinate branch.* It will be remembered, however, that the chief justice and associate justices of the Supreme Court did not think so when no less a personage than President Washington asked them for an extra-judicial service. Correspondence & Public Papers of John Jay, Vol. 3, p. 486 (cited Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246).

### Involving Moral Turpitude

2. Entirely apart from the consideration just discussed is another question. Has the petitioner been twice sentenced to imprisonment for a year or more for a crime "involving moral turpitude?" The recommendation sought may be made only if such is the case. The judge from whom the recommendation is asked must first make that finding. The Secretary of Labor must independently make the same finding before warrant of deportation may issue. Neither the judge nor the Secretary may shift that burden to the other. Each must decide it for himself.

This alien has received three sentences of imprisonment for a year or more for these offenses: (1) Perjury, in violation of Section 231, Title 18, U.S.C., 18 U.S.C.A. § 231; (2) Mailing a letter concerning a lottery, in violation of Section 336, Title 18, U.S.C., 18 U.S.C.A. § 336; (3) Attempting to evade a tax, in violation of Section 145(b), Title 26, U.S.C., 26 U.S.C.A. § 145(b).

Perjury undoubtedly is an offense involving moral turpitude. So it has been held for centuries. But there is no decision of any court holding that the second or third of the enumerated offenses involves moral turpitude. We are asked to make a ruling no court ever has made.

Now it is perfectly obvious that the phrase as used in this statute—"a crime involving moral turpitude"—supposes a classification other than that between felonies and misdemeanors and other than that between offenses infamous and not infamous. Those two classifications (if indeed they are not one and the same) depend upon the sentence *possible* under a statute (whether it may be a sentence to a penitentiary) and not at all upon the nature of the offense. This statute clearly supposes that one may be sentenced to imprisonment in a penitentiary for more than a year (that is, that he may have been convicted of a felony or infamous crime) without having been found guilty of "a crime involving moral turpitude."

There is another thing that is obvious from a mere reading of the statute. The "moral turpitude" that may be involved in a crime does not exist merely because there has been a crime, a violation of law. In a sense, it is immoral to violate any law, even a traffic ordinance, but here the words "involving moral turpitude" clearly suggest something much more serious, for otherwise they are pure surplusage. The "moral turpitude" must exist entirely apart from the fact that some statute has been violated. If a crime is one involving moral turpitude it is because the act denounced by the statute grievously offends the moral code of mankind and would do so even in the absence of a prohibitive statute. The moral code of mankind was not enacted and it cannot be amended by legislatures.

The dictionary (Webster's International, Second Edition) defines "turpitude" as—"inherent baseness or vileness of principle, words, or actions; depravity." "Moral", used in such a connection, is defined as—"pertaining to character, conduct, intentions, social relations, etc." These are precisely the definitions used by the courts in defining "moral turpitude." They are summed up by the definition given in 2 Bouv. Law Dict., Rawle's Third Revision, p. 2247, as follows: "Moral Turpitude. An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and

---

* The judges often do make recommendations to the executive for or against paroles. They are extra-judicial acts of course and could not be compelled. They are asked and are voluntarily given.

customary rule of right and duty between man and. man." While it must be conceded that some judicial opinions would support a definition that "moral turpitude" is anything contrary to the moral code, anything immoral, certainly the. better reasoned opinions are quite in line with Bouvier's definition as that definition is quite in line with the usual meanings of the words as defined by the lexicographers.

We are not prepared to rule that writing a letter concerning a lottery, even for the purpose of selling an interest in it, is an act of "baseness, vileness or depravity." On the contrary we think it would be ridiculous to say it is such an act. Even conducting a lottery is not such an act. Churches and states have conducted lotteries and they do so now where laws do not prohibit lotteries.

We are not prepared to rule that an attempt to evade the payment of a tax due the nation, or the commonwealth, or the city, or the school district, wrong as it is, unlawful as it is, immoral as it is, is an act evidencing baseness, vileness, or depravity of moral character. The number of men who have at some time sought to evade the payment of a tax or some part of a tax to some taxing authority is legion. Any man who does that should be punished civilly or by criminal sentence, but to say that he is base or vile or depraved is to misuse words.

Whether a particular crime involves moral turpitude depends on its description as set out in the statute defining it and upon the material essentials of the indictment charging it. It certainly does not depend upon unnecessary adjectives a zealous and over careful prosecutor may have added in the indictment to the essentials required by law nor upon the eloquent, perhaps even lurid, description of the offense by the prosecutor to court or jury.

Deportation Vel Non for Executive

3. In the terminology of Constitutional Law, some questions are "political." Questions of that character, generally speaking, are not. for the courts, but for the executive and legislative branches of government. Whether an undesirable alien should be allowed to stay here or be sent back to the country whence he came is a political, not a juridical, question. Much more than what ought to be done *with* an individual who is obnoxious is to be considered. What shall be done *to* a friendly foreign nation also is to be considered.

Italy is a friendly nation and has been a friendly nation since the beginning of its history. It was one of our allies in the Great War. Why should it be made a place of banishment for our criminals! Certainly Carrollo is *our* criminal. Italy is not responsible for him and his way of life. He did not come out of Italy in his maturity; he was only four years old when he left Italian shores. His criminal tendencies are American, not Italian, products. They were hatched in an incubator that we are heartily ashamed of and are doing our best to destroy, *but it certainly was not made in Italy*. Let the executive decide what shall be done with this man when he has served his sentences. The executive has exclusive supervision of international relations. Doubtless the executive will consult Italy about the matter before it sends Carrollo to Italy. (We should think Italy would regard the sending to that kingdom of a few hundred Carrollos as almost casus belli.)

The question of deportation is for the executive, not the judge. It ought to be left to the untrammeled decision of the executive. When the time comes that the executive actually is considering the deportation of Carrollo, if the executive then desires the benefit of our knowledge of Carrollo, we shall be glad to be of service.

The application for a recommendation that Charles V. Carrollo be not deported is denied. So ordered.