UNITED STATES ex rel. ALVAREZ Y FLORES v. SAVORETTI.

No. 14262.

United States Court of Appeals Fifth Circuit.

June 26, 1953.

David W. Walters, Miami, Fla., for appellant.

Douglas P. Lillis, Dist. Adjudication Officer, Immigration & Naturalization Service, Ernest L. Duhaime, Asst. U. S. Atty., Miami, Fla., Herbert S. Phillips, U. S. Atty., Tampa, Fla., Fred Botts, Asst. U. S. Atty., Miami, Fla., for appellee.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

BORAH, Circuit Judge.

On February 20, 1952, after a hearing, a Board of Special Inquiry entered an order in conformity with Section 136(e) of Title 8 U.S.C.A.[1] excluding appellant, a Cuban citizen, from admission into the United States on the ground that he had admitted the commission of a crime involving moral turpitude prior to his arrival, to-wit: Perjury. From this order appellant appealed successively and unsuccessfully to the Commissioner of Immigration and Naturalization and to the Board of Immigration Appeals. Having exhausted his administrative remedies appellant next applied to the United States District Court for the Southern District of Florida, for a writ of habeas corpus, which court, after a hearing, granted the petition for the writ, directed that the writ issue and, in the same order, ordered the writ discharged and the release of appellant under bond pending appeal to this court.

The facts which give rise to the above proceedings are as follows: On June 10, 1951, the appellant, Jose Alvarez Y Flores, was married by proxy to Angelina Touza Garrido, a United States citizen, she being then in Vigo, Spain and he in Venezuela. On July 24, 1951, appellant was admitted to the United States as an alien visitor for the period of two months, one of the conditions of his admission being that he would not accept or pursue employment while in the United States. On September 8, 1951, appellant and Angelina Touza Garrido were married again under the laws of New York.

In August of 1951 appellant applied for a six month's extension of the period of his admission and was granted an extension of three months. Thereafter, appellant's wife became ill and their financial condition serious. Appellant went to the Immigration office in New York, and, according to his testimony the following transpired:

---

1. Title 8 U.S.C.A. § 136(e) provides as follows:

"136. Aliens excluded

"The following classes of aliens shall be excluded from admission into the United States:

 *  *  *  *  *

"(e) Persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude  *  *  *."

"* * * I asked a question, which was the following question: My financial situation was bad and that I needed to work to support my home, and a lady who took care of me said: 'In your case, as you are on a visitor's permit, you can not work and we can not give you permission. Nevertheless, I will give you advice, but as a private citizen. If you need to work, go ahead and work' because after all it was not a crime and if I was found working by the authorities, that I would be given a hearing and at such hearing I could state that my circumstances compelled me to go to work, and it was no crime in doing so."

Contrary to the conditions of his admission, appellant thereupon found employment and worked a week in a hotel in New Jersey, several days thereafter in a restaurant, and then for a New York firm from October 26, 1951, to December 29, 1951. Around the 24th of December, 1951, appellant applied for another extension of his temporary stay and was granted fifteen days. In his application, which was executed under oath before an officer of the Immigration and Naturalization Service, he stated that he had not been employed since entering the United States. On January 5, 1952, appellant returned to Cuba and thereafter on February 14, 1952, he arrived at Miami, Florida, in possession of a nonquota immigration visa and applied for admission to the United States for permanent residence. At this time it was discovered that he had worked during his previous stay in the United States in violation of the conditions under which he had been admitted and contrary to the statement made by him in his second application for an extension. He was detained by the Immigration Service and a hearing was held on February 15, 1952, before a Board of Special Inquiry. Appellant testified before the

Board in Spanish, an interpreter being used. He was asked if he understood the meaning of the word "perjury" and answered "Yes, that is what I have committed." He further testified as follows:

"Q. You have stated that you understand the meaning of the word perjury. What is your understanding of the word perjury? A. To give false testimony, to take an oath knowing that it is false.

"Q. You are advised that an acceptable legal definition of the word perjury is as follows: Whoever, after having taken an oath to tell the truth in any material matter in any case in which an oath is authorized to be administered, and before any person or officer authorized to administer oaths, wilfully and corruptly makes false statements in such material matters, will be deemed guilty of perjury.[2] Do you understand? A. Yes.

"Q. You are further advised that for the purposes of immigration and naturalization laws of the United States, perjury is defined as a crime involving moral turpitude. Do you understand? A. Yes, perfectly.

"Q. Do you now admit that, by making false statements concerning your employment, under oath, in your application for an extension of your temporary admission in the United States before an officer of the Immigration and Naturalization Service at New York, New York in December, 1951, you thereby committed the crime of perjury which has been defined to you? A. Yes."

The hearing which was conducted throughout with commendable fairness was adjourned to February 20, 1952, to permit appellant's wife to appear and testify. Appellant was not represented by counsel at

---

2. The statute, Title 18 U.S.C. § 1621, defined perjury as follows:

"1621. Perjury generally

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, de-

pose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury * * *."

the hearing on February 15, 1952, but was so represented at the adjourned hearing. When all of the evidence was presented and after a full hearing the Board found that the alien was subject to exclusion and deportation, which finding and order of deportation gave rise to the proceedings which have led to this appeal.

Contending that the judgment of the lower court should be reversed appellant urges upon us: (1) that the hearing before the Board of Special Inquiry was unfair because appellant had neither counsel nor his wife to advise him at the hearing nor was an effort made by the Board to make certain that he understood what he was told as to the meaning of the crime of perjury and the consequences of his admission to having committed such a crime; (2) that the application which contained the false statement was not produced; (3) that it was not proven that appellant committed perjury because: (a) the facts admitted did not constitute such crime for lack of a corrupt intent; (b) the false statement was not material; (c) the offense admitted was not that of perjury but that of making a false statement under oath and consequently was not a crime involving moral turpitude; and (d) that he was not clearly advised of the essentials of perjury; (4) that the exclusion order was violative of the intent of the law. We are not persuaded.

The transcript of the hearing before the Board of Special Inquiry shows clearly that appellant was fully advised of his right to be represented by counsel and that he stated that he did not desire to be so represented, explaining that although he would like to have an attorney he could not afford one. He then expressed a willingness to answer questions at the hearing without representation by counsel. At the adjourned hearing he was represented by counsel and was afforded every opportunity to produce any evidence or make any statement or explanation he might wish, but he was content to say that he regretted what he had done and left the matter up to the Board. The record further shows that it was clearly explained to appellant that if he desired his wife to be a witness she could only attend the hearing after she had completed her testimony and he expressed himself as completely understanding the situation. As a matter of fact his wife did testify at the adjourned hearing and was present when appellant was given the opportunity to offer evidence or say anything further in his own behalf.

It is true that the hearing before the Board was conducted through an interpreter but despite the argument to the contrary there is nothing to indicate that the interpreter did not correctly translate the questions and answers. The Chairman of the Board was very careful to explain fully to appellant the legal definition of perjury and made every effort to be sure that the nature of such offense was understood. After assuring the Chairman that he understood thoroughly, appellant admitted having committed perjury. The record affirmatively shows that appellant is a person of some education. In his application for immigration visa he stated that he could speak, read and write four languages and gave his education as "Commercial Course (Accountant)". It further appears that he held various clerical positions from May of 1944 to July of 1951 including that of second cashier in a Bank in Coruna, Spain. Accordingly we cannot believe, in the light of the explicit explanation given by the Chairman, appellant's own expressed understanding of this explanation, and his educational and employment background, that he did not understand the nature of the offense that he was admitting having committed. At the adjourned hearing he was represented by counsel and had his wife present with him but made no effort to disclaim, explain or qualify his previous testimony and admission, though he was given every opportunity to do so. Only when the exclusion order had been affirmed by the Assistant Commissioner and the matter was on appeal to the Board of Immigration Appeals did appellant urge, in an affidavit: that for several reasons, including speech difficulties he had not understood the nature of the crime of perjury; and that he had intended to say only that he had made a false statement and had not intended to admit to having made the statement with any wilful or corrupt intent.

■ Appellant admitted at the hearing before the Board of Special Inquiry, and has never since denied, that he executed the second application for extension of stay under oath and that he made therein the untrue statement that he had not worked during his stay in the United States. Under the circumstances it was not necessary that the application be offered in evidence. Equally without merit is the claim that the false statement was not material. It was certainly material to the extent that appellant would not have been granted an extension if the truth had been known. Part 119.4 Title 8, Code of Federal Regulations provides:

"After an alien is admitted to the United States as a visitor, he may upon proper showing be granted an extension or extensions of the period of his admission, subject to all the following conditions * * *. (b) The alien shall establish that he has fulfilled, and agree that he will continue to fulfill, all applicable conditions of admission prescribed by § 119.3 * * *."

To obtain the extension it was necessary that appellant conceal the truth and the essential element of materiality was therefore present.

■ Next it is urged that appellant had no corrupt intent. In his testimony before the Board he stated that he asked for the second extension in order to spend the Christmas holidays and New Year's holidays with his wife. When asked why he made the false statement contained in the application, he said, "Well, in that case I admit that I did wrong, I swore falsely and the reason for it was to avoid inconveniences, which, after all, were to come up later on." It is clear that appellant, for his own purposes, made the false statement deliberately, knowing it to be untrue and swore to it as being true. Since it was material to obtaining the extension, his act in so doing constituted perjury. We need not consider whether it might also be a false statement violative of Section 220(c) of Title 8 U.S.C.A.

What we have said previously with reference to the contention that appellant did not fully understand the nature of the crime of perjury will dispose also of the contention that it was not fully explained to him.

■ Finding that appellant's case comes within the letter of 8 U.S.C.A. § 136(e), we see no necessity to search for any intent. The hearing before the Board of Special Inquiry was a fair one. Appellant, after a full explanation of the nature of the crime of perjury and a statement by him that he understood clearly the explanation, freely and voluntarily admitted having committed that offense, which is all that the statute requires.[3] At the adjourned hearing, with counsel and his wife present, he was given every opportunity to offer any evidence or say anything he desired in his own behalf, and he said nothing as to his prior admission. Having admitted the commission of a crime involving moral turpitude, towit: perjury, he must be excluded from the United States under the statute.

The judgment and order of the District Court is,

Affirmed.

---

3. United States ex rel. Boraca v. Schlotfeldt, 7 Cir., 109 F.2d 106; Howes v. Tozer, 1 Cir., 3 F.2d 849; United States ex rel. Rosen v. Williams, 2 Cir., 200 F. 538.