**TSEUNG CHU, also known as Bow Quong Chew, also known as Tseung Bowquong Chew, also known as Thomas Bowquong Chew, Appellant,**

v.

**Gordon L. CORNELL, Acting Officer in Charge of United States Department of Justice, Immigration and Naturalization Service at Los Angeles, California, Appellee.**

No. 15344.

United States Court of Appeals Ninth Circuit.

July 11, 1957.

Concurring Opinion Sept. 12, 1957.

**930**

Francis C. Whelan, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., James R. Dooley, Burton C. Jacobson and Richard A. Lavine, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and WALSH, District Judge.

BARNES, Circuit Judge.

By this action, plaintiff, an alien, sought a judicial declaration in the District Court that an order of deportation issued by the United States Department of Justice, Immigration and Naturalization Service, was invalid. Plaintiff prayed for declaratory relief, and for an injunction restraining the execution of said order of deportation, alleging that appellant had exhausted his administrative remedies. The District Court[1] denied relief to appellant. This is an appeal therefrom.

Section 212(a) of the Immigration and Naturalization Act of 1952, 66 Stat. 182, Title 8 U.S.C.A. § 1182(a) provides in pertinent part:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * *

"(9) Aliens who have been convicted of a crime involving moral turpitude, (other than a purely political offense) * * *

"(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other docu-

---

1. Jurisdiction was had under the provisions of § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009.

mentation or seeks to enter the United States by fraud, or by willfully misrepresenting a material fact."

The order of deportation issued against the defendant rested on two grounds:

(1) that prior to his last entry into the United States he had been convicted of a crime involving moral turpitude, to wit, the crime of wilfully attempting to defeat or evade the income tax; (Internal Revenue Code of 1939, Title 26, U.S.C.A. § 145(b) );

(2) that he had procured a visa for such last entry by fraud or by wilfully misrepresenting a material fact.[2]

The District Court found that the warrant of arrest was issued, charging appellant with being subject to deportation, on April 20, 1954, on the two grounds hereinabove stated. The District Court further found that deportation proceedings were held; that an administrative appeal from the decision of the Special Inquiry Officer was dismissed by the Board of Immigration Appeals; that the Immigration officials who acted had jurisdiction and authority to act; that there was reasonable, substantial, and probative evidence to support the decision of deportability, the order of deportation, and the warrant of deportation; that the deportation proceedings relating to appellant were fair, in accordance with law, and in accordance with appellant's constitutional rights; further, that the violation of Title 26 U.S.C.A. § 145(b) constitutes a crime involving moral turpitude within the meaning of Section 212(a)(9) of the Immigration and Naturalization Act; and, that appellant's failure to disclose his said conviction on his application for an immigration visa was a material fact which appellant was under a duty to disclose.

### The Facts.

Appellant first entered the United States at San Francisco, California, on November 9, 1907, as the son of a merchant. He departed June 15, 1912, and was readmitted October 22, 1913, as a treaty merchant. He left this country in 1947, and after six years residence in China, last entered the United States at Honolulu, T.H., on August 11, 1953, as a returning resident alien.

Prior to his last entry, and on March 27, 1944, appellant had been convicted on his plea of nolo contendere to violating Title 26 U.S.C.A. § 145(b), wilfully seeking to evade and avoid the payment of income tax.

In his application for a visa [Defendant's Exhibit A], appellant failed to disclose the fact of such conviction.

Question No. 32 on the application for visa reads as follows:

"I have never been arrested; convicted; in prison; in an almshouse; treated in an institution, hospital, or other place, for insanity or other mental disease; the beneficiary of a pardon or amnesty, except as hereinafter stated.",

to which the appellant gave the sworn answer: "None."

Appellant's conviction was based upon a four count indictment, filed February 16, 1944, summarized as follows:

Count I charged that appellant for the year 1937 had returned a net income of $1,724.42; that in fact his net income had been $12,440.72; that appellant had

"* * * wilfully, knowingly, unlawfully and feloniously" attempted

2. "The order of deportation was made by a Special Inquiry Officer of the Immigration and Naturalization Service [Agreement of Fact, Tr. p. 41], on December 7, 1954, after a warrant of arrest had been issued by the District Director, Immigration and Naturalization Service, on such two grounds [Agreement of Fact, Tr. p. 39] and after a deportation hearing pursuant to such warrant [Tr. pp. 40–41]

"An administrative appeal was taken by appellant from the order of deportation and was dismissed by the Board of Immigration Appeals on October 3, 1955 [Agreement of Fact, Tr. p. 41]. On October 27, 1955, a Warrant of Deportation was issued directing that plaintiff be deported from the United States [Agreement of Fact, Tr. p. 41]."

to evade and defeat his tax by making "* * * under his oath * * * a false and fraudulent income tax return for said calendar year * * *."

Count II charged that in 1938, in the same manner, and with the same intent and purpose, appellant had made a return of $3,778.21, but had actually received $15,795.77 net income.

Count III charged a 1939 return of $4,766.50, made with the same intent and purpose, and an actual net income of $37,760.65.

Count IV charged a 1940 return of $2,490.35, made with the same intent and purpose, and an actual net income of $14,998.78.

On March 27, 1944, the appellant

"* * * was convicted on his plea of nolo contendere of the offenses charged in the Indictment in the above entitled cause, to wit: make (sic) false and fraudulent income tax returns, as more fully set forth and charged in the counts of the indictment herein;"

and was fined $1,000 on each of the four counts.

On June 24, 1954, an order was entered by the United States District Court, "correcting a clerical error in judgment," on motion of counsel for appellant.[3] The deportation hearing was reopened by the Special Inquiry Officer, pursuant to motion of the alien's counsel, so that this corrected judgment could be introduced in evidence by the alien.

3. This order reads in pertinent part:
"* * * it appearing to the satisfaction of the Court that said judgment does contain a clerical error and mistake in that it improperly states: 'The defendant having been convicted on his plea of nolo contendere of the offenses charged in the indictment in the above-entitled cause, to wit, make false and fraudulent income tax returns as more fully set forth and charged in the counts of the indictment herein:
" 'It Is Therefore Ordered that said judgment be corrected and modified and changed to read as follows:

The correction in the judgment, removes the words

"make false and fraudulent income tax returns"

in the original judgment, and substitutes the words

"wilful attempts to evade and defeat income tax."

The Special Inquiry Officer observed that:

"* * * both judgments referring to the offenses charged in the indictment, and showing that the respondent (appellant) had been convicted on his plea of nolo contendere of those offenses."

### The Law.

Appellant states, "This appeal involves questions of law. While there are thirteen different specifications of error, appellant's position can be set forth in the discussion of four legal points," which, stated briefly, are these:

1. A violation of Title 26 U.S.C.A. § 145(b), Internal Revenue Code of 1939, is not a crime involving moral turpitude.

2. A violation of the same section was not a material fact which appellant was under a duty to disclose on his application for visa.

3. A "conviction" upon a plea of nolo contendere is not such a conviction as need be admitted in a civil proceeding, and therefore need not be disclosed in an application for an immigration visa.

4. The phrase "crime involving moral turpitude" as used in the Immigration and Naturalization Act does not have a

" 'On this 27th day of March, 1944 came the United States Attorney and the defendant Tseung Bowquong Chew, appearing in proper person and with his attorney, Gordon Lawson, Esq.
" 'Whereas the defendant having been convicted on his plea of nolo contendere of the offenses charged in the indictment in the above-entitled cause, to wit, wilful attempts to evade and defeat income tax, and the defendant having been now asked whether he has anything to say why judgment should not be pronounced against him, and no sufficient cause to the contrary being shown or appearing to the Court * * *'" [Exhibit 7.]

sufficiently definite meaning, "to afford a constitutional standard for deportation."

We shall consider these four points in turn.

## Is a Violation of Title 26 U.S.C.A. § 145(b), Internal Revenue Code of 1939, a Crime Involving Moral Turpitude, As That Term Is Used In Section 212(a) (9) of the Immigration and Naturalization Act?

■ In the leading case of Jordan v. De George, 1951, 341 U.S. 223, 71 S. Ct. 703, 704, 95 L.Ed. 886, there was but one question presented:

"* * * whether conspiracy to defraud the United States of taxes on distilled spirits is a 'crime involving moral turpitude' within the meaning of § 19(a) of the Immigration Act of 1917. * * * The indictment specifically charged him with possessing whiskey and alcohol 'with intent to sell it in fraud of law and evade the tax thereon.' He was further accused of removing and concealing liquor 'with intent to defraud the United States of the tax thereon'."

Defendant pleaded guilty, was sentenced, served his time and was again indicted.

"He was charged with conspiring to 'unlawfully, knowingly and willfully defraud the United States of tax on distilled spirits'."

He was tried, found guilty, and sentenced. Deportation proceedings were then commenced against De George, as an alien who more than once had been sentenced for one year or more

"* * * because of conviction in this country of a[ny] crime involving moral turpitude."

De George sought release by habeas corpus, claiming the crime of which he had been convicted did not involve moral turpitude. The Supreme Court, determining this one issue before it said:

"Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude. * * * In every deportation case where fraud has been proved, federal courts have held that the crime in issue involved moral turpitude. This has been true in a variety of situations (citing cases and the facts therein)."

In Chanan Din Khan v. Barber, D.C. N.D.Cal., 1957, 147 F.Supp. 771, 775, the same matter was in issue. There the District Court found that a violation of § 145(b) is a crime involving moral turpitude.

"* * * the Courts have, with apparent unanimity, held that in order for a conviction under § 145(b) to stand, the government is required to prove that the evading taxpayer had a specific intent to evade taxation *amounting to an intent to defraud the United States.* (Emphasis by the Court.) Fraud is so inextricably woven into the term wilfully, *as it is employed in § 145(b)*, that it is clearly an ingredient of the offense proscribed by that section. Only by creating unwarranted semantic distinctions could a contrary conclusion be reached." (Emphasis added.)

Cf.: Wardlaw v. United States, 5 Cir., 203 F.2d 884; Bloch v. United States, 9 Cir., 221 F.2d 786, 788.

We are not unmindful of the myriad decisions sponsoring various concepts of moral turpitude. They offer no well settled criteria.[4]

4. E. g., United States ex rel. McKenzie v. Savoretti, 5 Cir., 1952, 200 F.2d 546 (forgery, uttering and larceny); Bermann v. Reimer, 2 Cir., 1941, 123 F.2d 331 (obtaining goods by false representations); United States ex rel. Berlandi v. Reimer, 2 Cir., 1940, 113 F.2d 429 (evasion of revenue taxes); Maita v. Haff, 9 Cir., 1940, 116 F.2d 337 (violation of pro-hibition laws); Mercer v. Lence, 10 Cir., 1938, 96 F.2d 122, certiorari denied 1938, 305 U.S. 611, 59 S.Ct. 69, 83 L.Ed. 388 (conspiracy to defraud by deceit and falsehood); Guarneri v. Kessler, 5 Cir., 1938, 98 F.2d 580, certiorari denied 1938, 305 U.S. 648, 59 S.Ct. 229, 83 L. Ed. 419 (conspiracy to smuggle and con-

It is true, as appellant contends, that the words "involving moral turpitude" refer (—at least by Bouvier's dictionary definition—) to conduct "which is inherently base, vile, or depraved, contrary to accepted rules of morality, whether it is or is not punishable as a crime," while the interpretation placed by the courts on the word "wilful" as used in § 145(b) (and not as the word is interpreted in certain other statutes) requires the trier of fact only to find evil motive or bad purpose, plus a specific intent to defraud the government.[5] This intent to defraud supplies the necessary element sufficient to make a violation of § 145(b) a crime involving moral turpitude.

Appellant maintains that the crime of wilful attempt to defeat or evade the income tax in any manner does not *necessarily* involve moral turpitude, citing this Court's decision in Twentieth Century-Fox Film Corp. v. Lardner, 216 F.2d 844, at page 852, certiorari denied 348 U.S. 944, 75 S.Ct. 365, 99 L.Ed. 739. By this argument, appellant attempts to broaden language used in that case merely as an example (i.e., "willful failure to pay federal income tax") to be the exact equivalent of the language of the tax evasion statute ["wilful attempts in any manner to evade or defeat any tax imposed by this Chapter"]. It should be pointed out in this connection, that Twentieth Century-Fox Film Corp. has more to say than appellant notes. It further states:

"With respect to crimes and moral turpitude, there are three possible classifications:

"1. Those crimes necessarily involving moral turpitude, for example, frauds;

"2. Those crimes which are so obviously petty that a record of conviction does not admit of a suggestion of moral turpitude, for example, overtime parking;

"3. Those crimes which may be saturated with moral turpitude, but nevertheless do not contain moral turpitude as a necessary element for conviction, for example, willful failure to pay federal income tax, and refusal to answer proper questions of a congressional committee. See In re Hallinan, 43 Cal.2d 243, 272 P.2d 768."

And thereafter, this Court went on to say:

"It would appear that although the crime, per se, is one not historically infamous, or one requiring as an essential element the proof of facts involving moral turpitude, yet the facts of the particular crime of Lardner in refusing under all the circumstances to tell the committee whether he was a communist should be held moral turpitude as a matter of law—not on the bare record of conviction, but on the record of Lardner's actions before the congres-

ceal imported alcohol with intent to defraud the revenue); United States ex rel. Popoff v. Reimer, 2 Cir., 1935, 79 F.2d 513 (fraudulently aiding an alien not entitled to naturalization to apply for citizenship); Ng Sui Wing v. U. S., 7 Cir., 1931, 46 F.2d 755 (rape); Lane ex rel. Cronin v. Tillinghast, 1 Cir., 1930, 38 F.2d 231 (lewdness); United States ex rel. Allessio v. Day, 2 Cir., 1930, 42 F.2d 217 (manslaughter and counterfeiting); Tillinghast v. Edmead, 1 Cir., 1929, 31 F.2d 81 (larceny); United States ex rel. Medich v. Burmaster, 8 Cir., 1928, 24 F. 2d 57 (concealing assets belonging to trustee in bankruptcy); Weedin v. Tayokichi Yamada, 9 Cir., 1925, 4 F.2d 455 (assault with a deadly weapon).

United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1938, 94 F.2d 263; United States ex rel. Iorio v. Day, 2 Cir., 1929, 34 F.2d 920; Bartos v. United States District Court, 8 Cir., 1927, 19 F.2d 722; Coykendall v. Skrmetta, 5 Cir., 1927, 22 F.2d 120; United States v. Francioso, 2 Cir., 1947, 164 F. 2d 163.

5. In Bloch v. United States, supra, in commenting upon an instruction to the jury in a prosecution under § 145(b), this Court stated that the District Court had told the jury it must find intent to defraud the government of the income tax due. *This Court then said: "That is a correct statement of the law."* [221 F.2d 788.]

sional committee which had led to his conviction in the district court in Washington, D. C."

Thus whether the crime to which the appellant plead guilty by plea of nolo contendere falls within categories one or three of the Twentieth Century-Fox decision is not decisive. He was here charged with making in each of four years "a false and fraudulent income tax return." Fraud may not be an essential element of the crime of wilful attempt to defeat or evade the income tax (United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917), but it can be an essential part of that crime. Here fraud was charged as part and parcel of the crime, and to that crime so involving appellant's alleged fraudulent acts, appellant plead nolo.

The "order correcting clerical error in Judgment" eliminating the description of the offense charged as "making false and fraudulent income tax returns" may technically take the *judgment* out of Class One described by Judge Chambers in the Twentieth Century-Fox Film classifications, but it does not take the *crime as charged* out of Class One.

We are familiar with the decision of the California Supreme Court in In re Hallinan, 1954, 43 Cal.2d 243, 272 P.2d 768, 771. That case reaffirms the settled principle that,

"* * * whatever else it (moral turpitude) may mean, it includes fraud, and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude,"

and then points out, discussing the adjudicated cases, that

"* * * an intent to defraud is not an essential element of section 145(b), and a conviction under that section does not necessarily involve moral turpitude,"

(citing United States v. Scharton, supra) (272 P.2d at page 772), although

it may. (272 P.2d at page 774)[5a] Thereafter, in In re Hallinan, 48 Cal.2d —, 307 P.2d 1, 2, the California Supreme Court held the facts and circumstances surrounding the commission of the offense of which petitioner was convicted did involve moral turpitude. The Court succinctly stated:

"Criminal acts involving intentional dishonesty for the purpose of personal gain are acts involving moral turpitude. * * * An examination of the record * * * discloses ample evidence that petitioner intentionally and for the purpose of personal gain filed false income tax returns for the years 1947 to 1950, inclusive."

It has been held in certain cases that the crime of which an alien was convicted twice (in order to deport him, 8 U.S.C.A. § 1251(a) (4)) "must *necessarily* involve moral turpitude to warrant deportation." (Emphasis added.) In these cases it is said that:

"* * * when by its definition [the crime] does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral." United States ex rel. Robinson v. Day, 1931, 2 Cir., 51 F.2d 1022, involving forgery, and suspended sentence; United States ex rel. Griffo v. McCandless, D.C., 28 F.2d 287, 288 (involving aggravated assault and battery); United States v. Carrollo, D.C.1939, 30 F.Supp. 3, 7 (involving income tax violation § 145(b)); United States ex rel. Giglio v. Neelly, 1953, 7 Cir., 208 F.2d 337, 340–342 (involving counterfeiting pennies).

But, United States ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757, 759, in the Per Curiam opinion on Petition for Rehearing, explains that the judgment alone does not control; the indictment is properly considered in coming to a determina-

5a. See also, Kentucky State Bar Ass'n v. Brown, Ky., 302 S.W.2d 834; 25 Law Week 2575; Louisiana State Bar Ass'n v. Steiner, 204 La. 1073, 16 So.2d 843; Louisiana State Bar Ass'n v. Connelly, 201 La. 341, 9 So.2d 582; 206 La. 883, 20 So.2d 168.

tion whether moral turpitude is involved where there has been a conviction of any crime (there, assault). In discussing the general language of United States ex rel. Robinson v. Day, the Court said:

"This language means that neither the immigration officials nor the court reviewing their decision may go outside the record of conviction to determine whether in the particular instance the alien's conduct was immoral. And by the record of conviction we mean the charge (indictment), plea, verdict, and sentence. The evidence upon which the verdict was rendered may not be considered, nor may the guilt of the defendant be contradicted. So construed, there is no inconsistency between that opinion and this; and such is plainly the correct construction, because it is the specific criminal charge of which the alien is found guilty and for which he is sentenced that conditions his deportation, provided it involves moral turpitude. * * *" (Emphasis added.)

See also, United States v. Carrollo, supra, 30 F.Supp. at page 7, point 12, 2d ¶.

In re Hallinan, supra, also quotes United States v. Carrollo, supra, for the principle that whether or not a crime involves moral turpitude does not depend upon unnecessary adjectives added to the indictment by a "zealous and over careful prosecutor." We agree with that principle, but we do not concede, in view of the rule laid down by us in the Bloch case, and the language of the Supreme Court in the De George case, that the language added to the indictment to which appellant here pleaded can be classified as "unnecessary."

We follow the rule laid down in the De George case supra, and Bloch v. United States, 1955, supra, that an intent to defraud the government is a prerequisite to conviction under section 145(b)[6] and hence, a conviction thereof where such fraud is charged in the indictment, is conviction of a crime involving moral turpitude.[7]

Is a Violation of Title 18 U.S.C.A. § 145(b) (Internal Revenue Code of 1939) a Material Fact Appellant Was Under a Duty To Disclose In His Application for a Visa?

■ Once we have concluded that the conviction of § 145(b) was a conviction involving moral turpitude, then appellant was under a duty to disclose it as a material fact, for a conviction of a crime involving moral turpitude is without question a material fact. The cases cited by appellant, United States ex rel. Iorio v. Day, 1929, 2 Cir., 34 F.2d 920 (possession of Whiskey); Matter of B.,

6. This same rule was followed in this Circuit by a recent District Court case (Chanan Din Khan v. Barber, 147 F. Supp. 771, at page 775) which relied (in Note 5) on:
"United States v. Rosenblum, 7 Cir., 176 F.2d 321, certiorari denied 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548; United States v. Raub, 7 Cir., 177 F.2d 312; Norwitt v. United States, supra [9 Cir., 195 F.2d 127, certiorari denied 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 635], (main text); Wardlaw v. United States, 203 F. 2d 884; Bloch v. United States, 9 Cir., 221 F.2d 786; Legatos v. United States, 9 Cir., 222 F.2d 678; and United States v. Clark, D.C., 123 F.Supp. 608. Cf. Berra v. United States, 351 U.S. 131, at page 134, 76 S.Ct. 685, at page 687, 100 L.Ed. 1013.

"Plaintiff contends that the case of United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917, is determinative of the issue of whether fraud is an element in § 145(b). A close examination of that case, however, discloses that the Supreme Court decided only that in order for the government to avail itself of the 6-year statute of limitations for fraud actions, the statute under which it was prosecuting must be specifically couched in terms of fraud. Moreover, the recent case of Berra v. United States, supra, sheds considerable doubt on plaintiff's interpretation of the Scharton case."

7. Cf. also Berardi v. Ritter, 42 N.J.Super. 39, 125 A.2d 877, 881; Maita v. Haff, 9 Cir., 1940, 116 F.2d 337, 339 (distilling of alcohol with intent to defraud the United States of the tax involves moral turpitude).

3—Adm. Dec. 278; Matter of M. (Interim Dec. 791, May 23, 1956)

all relate to failure to disclose matters which could not have been the basis for deportation. Cf.: Rousseau v. Weedin, 9 Cir., 284 F. 565, at page 566; Berman v. Reimer, 2 Cir., 1941, 123 F.2d 331; Masaichi Ono v. Carr, 9 Cir., 1932, 56 F.2d 772; United States ex rel. Alvarez y Flores v. Savoretti, 5 Cir., 1953, 205 F.2d 544.

And see discussion of United States ex rel. Iorio v. Day, supra, by the same Court in a subsequent decision, Berlandi v. Reimer, 2 Cir., 1940, 113 F.2d 429, 430 (Judge L. Hand dissents).

We need not here come to the question of whether or not *any* conviction, whether of a crime involving moral turpitude or not, or whether of a felony or a misdemeanor, is a material fact of which the government is entitled to be advised.

Is the Rule Made Any Different Where the Conviction Is By Plea of Nolo Contendere?

We conclude that it is not.

 Appellant relies on Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 71 L.Ed. 347, and dictum in United States ex rel. Bruno v. Reimer, 2 Cir., 1938, 98 F.2d 92.

The Second Circuit court in the Bruno case, in rejecting the alien's plea that a nolo contendere plea is not a conviction, had this to say by per curiam opinion (pages 92–93):

" * * * It is true that the plea is not treated as a confession, which can be used against the accused elsewhere; but it gives the judge as complete power to sentence as a plea of guilty. Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347. And it is as conclusive of guilt for all purposes of prosecution under the indictment, (citations). Moreover, a sentence upon it is a conviction within the terms of a local statute applying to second offenders. (citation) The relator might succeed, therefore, if deportation de-

pended upon his admission of *the commission of a crime,* as it may in the case of crimes committed before entry; but *since it depends upon conviction and sentence, conviction and sentence are the only relevant facts,* and the accused may be deported whenever these have been procured by any lawful procedure, as in this case they were." (Emphasis added.)

The Hudson case, in which Chief Justice Stone takes the opportunity to prove his extraordinary knowledge of the English Common Law, does not stand alone for the rule, as appellant maintains, that a plea of nolo contendere "does not create an estoppel to deny conviction." Mr. Justice Stone points out that in Hawkins, Pleas to the Crown, 8th Ed., Book 2, Chap. 31, 466, the author treats rather inadequately of Confessions; Express or Implied; and that under early English practice an "implied confession, as contrasted to the express confession, does not estop the defendant to plead and prove his innocence in a civil action." [272 U.S. 451, 47 S.Ct. 129.] Thus far the Chief Justice has been describing the contents of the early English text. He then states:

"But even if we regard the implied confession as a petition (for the mercy of the King) which in Hawkins' time had to be accepted as tendered, in modern practice it has been transformed into a formal plea of nolo contendere. Like the implied confession; this plea does not create an estoppel, but like the plea of guilty, *it is an admission of guilt for the purposes of the case.*" (Emphasis and portion in parenthesis added.) Cf. also, United States v. Norris, 1930, 281 U.S. 619, 622, 50 S.Ct. 424, 74 L.Ed. 1076.

Appellant was not asked on his application for visa if he was or was not guilty of any crime; nor if he had or had not plead guilty to a crime. He was asked if he had ever been convicted. It was to this that his answer was "none." It was this that was false.

While all jurisdictions do not agree, it is the majority rule that a plea of nolo contendere is an implied confession of guilt, and has the same effect as a plea of guilty, so far as the proceedings on an indictment are concerned. Hence a defendant who has been sentenced on such a plea is to be deemed convicted of the offense for which he was indicted. Commonwealth v. Ingersoll, 145 Mass. 381, 14 N.E. 449.

The plea of nolo contendere admits matters alleged in the information when the plea is entered. Ellsworth v. State, 258 Wis. 636, 46 N.W.2d 746, 748.

Except under extraordinary circumstances, the plea of nolo contendere leaves open for review but one thing— the sufficiency of an indictment. United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 412, 67 S.Ct. 775, 91 L.Ed. 973.

The plea of nolo contendere when accepted by the court, becomes for all practical purposes, "the full equivalent of a plea of guilty," Farrington v. King, 8 Cir., 128 F.2d 785, 786, but distinguishable from that plea "in that it cannot be used against the defendant as an admission *in any civil suit for the same act*." (Emphasis added.) Tucker v. United States, 7 Cir., 1912, 196 F. 260, 262.

If plaintiff were sued civilly for his income tax deficiency, he could with propriety have objected to the introduction of the plea of nolo contendere as any admission on his part that he did defraud the government. The plea cannot be used to prove he did defraud the government. It can be used to prove he did not answer the question truthfully, when, asked if he had ever been convicted, he replied that he had not. The question went to, and his answer included, conviction in *any case*, including the one to which he had entered a nolo plea, "the equivalent of a guilty plea in that case, for all practical purposes." Cf. Twin Ports Oil Co. v. Pure Oil Co., D.C.1939, 26 F.Supp. 366, 376, and cases cited and discussed; United States v. Jones, D.C., 1954, 119 F.Supp. 288, 290.

Does the Phrase "Crime Involving Moral Turpitude" Have a Sufficiently Definite Meaning to Afford a Constitutional Standard for Deportation?

■ We feel this point is best answered by the consideration of the precise point in Jordan v. De George, supra. There the Court said:

"But it has been suggested that the phrase 'crime involving moral turpitude' lacks sufficiently definite standards to justify this deportation proceeding and that the statute before us is therefore unconstitutional for vagueness. Under this view, no crime, however grave, could be regarded as falling within the meaning of the term 'moral turpitude.' The question of vagueness was not raised by the parties nor argued before this Court.

"It is significant that the phrase has been part of the immigration laws for more than sixty years. As discussed above, the phrase 'crime involving moral turpitude' has also been used for many years as a criterion in a variety of other statutes. No case has been decided holding that the phrase is vague, nor are we able to find any trace of judicial expression which hints that the phrase is so meaningless as to be a deprivation of due process.

"Furthermore, this Court has itself construed the phrase 'crime involving moral turpitude.' In United States ex rel. Volpe v. Smith, Director of Immigration, 1933, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298, the Court interpreted the same section of the Immigration Statute now before us. There, an alien had been convicted of counterfeiting government obligations with intent to defraud, and one question of the case was whether the crime of counterfeiting involved moral turpitude. This question was raised by the parties and discussed in the briefs. The Court treated the question without hesitation, stating that the

crime of counterfeiting obligations of the United States was *'plainly a crime involving moral turpitude.'* 289 U.S. at page 423, 53 S.Ct. at page 666. (Emphasis supplied.)

"The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576 [95 L.Ed. 774], decided April 23, 1951; Screws v. United States, 1945, 325 U.S. 91, 103–104, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495. This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law. Lanzetta v. State of New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516. It should be emphasized that this statute does not declare certain conduct to be criminal. Its function is to apprise aliens of the consequences which follow after conviction and sentence of the requisite two crimes.

"Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation. The Court has stated that 'deportation is a drastic measure and at times the equivalent of banishment or exile * * *. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty.' Fong Haw Tan v. Phelan, supra [333 U.S. 6, at page 10, 68 S.Ct. 374, at page 375, 92 L.Ed. 433]. We shall, therefore, test this statute under the established criteria of the 'void for vagueness' doctrine.

"We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automat-

ically render a statute unconstitutional for indefiniteness. United States v. Wurzbach, 1930, 280 U.S. 396, 399, 50 S.Ct. 167, 168, 74 L.Ed. 508. Impossible standards of specificity are not required. United States v. Petrillo, 1947, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. Connally v. General Construction Co., 1926, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322.

"We conclude that this test has been satisfied here. Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." Jordan v. De George, supra, 341 U.S. at pages 229–232, 71 S.Ct. at page 707.

While it is true that Mr. Justice Jackson, who was joined by Mr. Justice Frankfurter, wrote a strong dissent, we feel bound by the language and reasoning of the majority of the Supreme Court.

The other matters raised by appellant go to the insufficiency of the evidence to support certain findings of fact, and alleged errors in conclusions of law. We are satisfied no error existed in such Findings and Conclusions, once the four issues hereinabove discussed in detail have been determined adversely to appellant.

The judgment is affirmed.

CHAMBERS, Circuit Judge (concurring).

My opinion in Twentieth Century-Fox Film Corp. v. Lardner, 9 Cir., 216 F.2d 844, 51 A.L.R.2d 728, has created some trouble here. Therein we divided crimes into three categories: 1. Those necessarily involving moral turpitude. 2. Those not involving moral turpitude. 3. Those which might or might not involve moral turpitude. As an example of class

(3), we referred to a conviction of willful failure to pay federal income tax. We then cited In re Hallinan, 43 Cal.2d 243, 272 P.2d 768, where the California Supreme Court held that Hallinan's conviction did not import per se moral turpitude.

Without retreating from what was there said, it is evident that a word of explanation is necessary. Lardner's case was a civil diversity case. We were bound to apply California law. At the time of the decision in Lardner, Hallinan's case was new. California had just held that for California purposes—a statute for disbarment involving moral turpitude—Hallinan's conviction was one that might or might not involve moral turpitude. If California should hold any kind of a federal income tax conviction could never involve moral turpitude, we should follow California in construing a California statute or a California contract involved in diversity litigation.

In Tseung Chu's case we have no duty to follow In re Hallinan. Here "moral turpitude" is found in a federal statute. Under such circumstances I can and do say that on the face of the indictment under § 145(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b), Tseung Chu was charged with a crime involving moral turpitude for our purposes under 66 Stat. 182 § 212(a) (9), 8 U.S.C.A. § 1182(a) (9).* To the charge, he entered a nolo contendere plea. I think that this was a material matter he should have disclosed when he signed the immigration form for last entry. He knew he had been in serious trouble—from the amount of money alone which had been involved on his income tax shortage. I would prefer to leave the case there without going into the matter of whether his "nolo contendere" plea was a conviction. My judgment is that the plea must be construed as a conviction, but I do not reach the question.

Generally, by way of post-mortem, I think one should remember this about Lardner's case: There we had not only the indictment and the conviction of Lardner, but we had also in evidence a complete photosound record of Lardner and his associates committing the crimes for which they were convicted. After looking at this audio-visual evidence we thought he had committed a crime involving moral turpitude.

---

* See Achilli v. United States, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918; Forster v. United States, 9 Cir., 237 F.2d 617.